STATE OF NEBRASKA, APPELLEE, v. ROBERT L. KINCAID, APPELLANT.

279 N. W. 2d 152

Filed May 22, 1979. No. 42184.

Robert L. Kincaid, pro se.

Paul L. Douglas, Attorney General, and Jerold V. Fennell, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, MCCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

HASTINGS, J.

Defendant appeals his conviction, on a guilty plea, of a felony charge of issuing an insufficient fund check and ultimate sentence to a term of 2 to 5 years in the Nebraska Penal and Correctional Complex. His assignments of error may be condensed into three: (1) The trial court's refusal to appoint counsel for defendant prior to his guilty plea; (2) involuntariness of the guilty plea; and (3) excessive sentence.

An information was filed in the District Court on June 29, 1977, charging that defendant issued an insufficient fund check in the amount of $1,500 on May 3, 1977. Defendant was scheduled for arraignment on July 7, 1977, but at the request of his counsel, Bernard Walsh, Jr., the matter was continued to July 14, 1977, at which time he entered a plea of not

guilty. The case was set for trial to the next jury panel. On November 14, 1977, at the request of defendant and his attorney, the case was continued for trial on December 5, 1977, later continued to January 9, 1978, then February 6, 1978, and finally was scheduled to commence trial on March 15, 1978, at 2 p.m. This order was entered on March 13, 1978, after the court had denied the oral motion of attorney Walsh to withdraw as defendant's counsel.

The only reported hearing prior to the one of March 13, 1978, was one held on December 1, 1977, when defendant and his attorney requested a continuance until after January 1, 1978, "to give Mr. Kincaid an effort — or a time to clean up his unpaid checks. And if the matters have not be [sic] resolved by that time, Mr. Kincaid will plead guilty. Now, this is my understanding with Mr. Pane, [the prosecutor] and this is Mr. Kincaid's understanding; is that right?" To this statement by Mr. Walsh the defendant answered, "That's right." Following this hearing the various continuances set out above were granted, presumably for the same reason.

On March 13, 1978, around 9:30 a.m., defendant appeared with his counsel and the county prosecutor, obviously at the request of the court, to determine whether or not there was to be a jury trial which had previously been set for March 15, 1978. The trial judge detailed the past history of the case and told the defendant that "the sands of time have just about run out on your hourglass." and "There won't be any more continuances, and the moment of decision has arrived for Mr. Kincaid." The defendant reported he had been in the hospital in February following an automobile accident and "Another thing: I've been continuing this so I could pay these checks off. I had about $6,000 worth, * * * I've paid over half of them off now. * * * but I'm just trying to explain to you, Judge, why I've — I've been stalling this so long. I haven't had all the money, and I still

don't have it. * * * I realize Mr. Pane has given me every chance in the world. He's been a gentleman; he's helped me in every way." The court informed the defendant that its patience was exhausted and there would be no more continuances, and set the case for trial to commence 2 days later, at 2:30 in the afternoon.

Mr. Walsh then moved to withdraw from the case because defendant had assured him "that he would plead guilty if he was not able to pay these checks off. * * * Mr. Kincaid is aware of that. I told him this morning in my office that I felt that he's been given every opportunity. He feels he isn't guilty. I feel that the law is contrary." The court replied, "I don't see how I can permit you to withdraw now, Mr. Walsh. There's no way that I'm going to continue this case past this panel. If you want to talk to the Public Defender's Office, fine. But I — Mr. Kincaid, I don't think, even qualifies for the services of the Public Defender's Office." The defendant said he had only paid Mr. Walsh $100, he didn't have the money to hire an attorney, and would like "to ask the Court to appoint me an attorney." The defendant went on to say, "Mr. Walsh * * * *Since I told him that I was going to pay these off and it was going to be dismissed,* * * * he hasn't looked into the case. * * * We don't have any witnesses." (Emphasis supplied.) The court stated that he had had plenty of time to get all the witnesses he wanted, to which the defendant agreed, and the court denied the application to withdraw. In response to a question by the defendant, he was told he could represent himself if that is what he chose to do. The defendant denied the statement made by the court that what he had in mind was to get his attorney to withdraw so he could have more time, and insisted that he would appear for trial as scheduled, but he wanted to talk to the public defender's office. The court answered: "You can talk to the Public Defender's Office * * *."

Defendant again stated he didn't want to represent himself, that his present attorney advised him to plead guilty, and that if he didn't do so his attorney felt there would be more charges filed. He admitted there were more than $6,000 in outstanding bad checks, but that he didn't feel he was guilty on this particular charge. The court assured defendant he didn't need to accept his attorney's advice, and, if he chose to reject it, Mr. Walsh would still do the best he could to see that he got a fair trial, as would the court.

The following morning, the day before the trial was to begin, defendant appeared in court with attorney Walsh and entered a plea of guilty. Defendant told the court he knew what he was doing; he was told the penalties and said he understood them; and his understanding of the plea agreement was that sentence would be deferred for approximately 60 days to give him a chance to make restitution, but that other than that no threats, coercion, or promises had been made or used. The court further explained the various pleas defendant could make; that if he plead not guilty he would be entitled to a jury trial, the right of confrontation and cross-examination, the right against self-incrimination, the right to subpoena witnesses, the presumption of innocence, the burden of proof, and the requirement of a unanimous verdict; and that all of those rights were waived by a plea of guilty. Defendant acknowledged these rights and advised the court the plea he was about to make was completely voluntary and thereupon entered a plea of guilty. In establishing a factual basis for the plea, the defendant admitted he wrote the check and that at the time he did not have funds in the bank to cover the check. He also agreed that he gave the check for the purchase of an automobile from an individual, and that he then sold the automobile and kept the proceeds. About the only thing the court neglected to ask the

defendant was whether or not he was satisfied with the representation of his attorney, Mr. Walsh. However, Mr. Walsh was present with defendant and participated in the arraignment to a limited extent. The court accepted the plea, found defendant guilty, and set sentencing for May 22, 1978.

Defendant appeared with Mr. Walsh for sentencing as scheduled, and advised the court he knew of no reason why sentence should not then be imposed. Mr. Walsh made a rather lengthy and impassioned plea for probation, setting forth defendant's family background and his desire to still make restitution. The defendant himself also promised restitution if given a chance.

Following the sentencing, Mr. Walsh perfected defendant's appeal to this court except for the brief, which was filed pro se. By motion filed by defendant on January 31, 1979, and unopposed by the State, defendant asked that argument and submission of his case be continued to the April 1979 call for the reason that he would then have sufficient funds to hire a lawyer. This was granted and he was represented by counsel before this court.

The foregoing rather long and detailed recitation of the facts is necessary in order to answer two of the claimed errors: Lack of voluntariness of the guilty plea and denial of appointed counsel, which are closely interwoven and in every case are peculiarly related to the surrounding circumstances.

With the exception of the listing of the assignments of error, defendant's entire brief is devoted to the claim of excessiveness of the sentence. However, all three assignments of error will be discussed in this opinion.

It is beyond question that as a general rule a defendant is entitled to retain counsel of his own choice and may not be denied the right to change retained counsel unless the result is to interfere with the orderly procedure in the courts without a showing of

good cause for the desired change. As stated in State v. Addison, 197 Neb. 482, 249 N. W. 2d 746 (1977), a reverse situation wherein the defendant wanted to discharge appointed counsel and retain counsel of his choice, "Defendant made no showing as to any reason for his dissatisfaction with appointed counsel. What we said in State v. Coleman, *supra*, is particularly apt herein and is controlling: 'This case directly raises the issue of the right of a criminal defendant to seek substitute counsel on the very eve of trial without demonstrating a good cause therefor, when the record shows that he has been represented throughout by court-appointed counsel in a diligent and competent manner. We hold that the right of counsel, accorded under the Sixth Amendment, cannot be manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice. Requests for the appointment of new counsel on the eve of trial should not become a vehicle for achieving delay." Defendant admitted he had been requesting continuances to intentionally stall his trial, and that he had agreed on several occasions he would plead guilty if he could not make the checks good. His only complaint about his retained counsel's competency was that counsel had believed the defendant when told that he, the defendant, was going to have the checks paid off and the case was going to be dismissed, as a result of which counsel hadn't looked into the case or investigated for favorable witnesses. This is hardly a legitimate complaint and certainly is not a showing of good cause under the circumstances.

Be that as it may, the trial court gave defendant two additional options: One, he was told he could represent himself, and two, even though the court doubted Kincaid's eligibility for appointment of counsel, he could take his papers and consult with the public defender. The defendant appeared in

court the day ahead of his scheduled trial with his same retained counsel and appeared again under the same circumstances at the sentencing without further complaint or conversation about counsel. Particularly appropriate are these words from State v. Kirby, 198 Neb. 646, 254 N. W. 2d 424 (1977): "In Faretta, *supra*, the Supreme Court, explaining its holding that a defendant in a criminal trial has a constitutional right to proceed without counsel, stated: 'An unwanted counsel "represents" the defendant only through a tenuous and unacceptable legal fiction. *Unless the accused has acquiesced in such representation*, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not *his* defense.' " Kincaid's acquiescence is self evident. Defendant was represented by counsel at all stages of the proceedings in District Court.

As to the voluntariness of the guilty plea, the trial judge thoroughly and painstakingly explained all of defendant's rights. From the rather lengthy recitation of the facts in this opinion, it is apparent that the plea was voluntarily, knowingly, and understandingly made. Defendant's protestation of innocence falls on deaf ears in light of the facts admitted by him during the arraignment and sentencing. He apparently extracted the last drop of advantage when he finally plead guilty in exchange for a 60-day delay in sentencing. In any event, an accused may voluntarily, knowingly, and understandingly plead guilty to a crime even though his plea contains a protestation of innocence, when he intelligently concludes that his interests require a guilty plea and the record strongly evidences guilt. State v. Rubek, 189 Neb. 141, 201 N. W. 2d 255 (1972).

Defendant's presentence investigation report contains three pages of arrests or convictions from 1946 to 1977, including 19 check charges, with penalties ranging from dismissal upon making restitution to 1

to 5 years *suspended* sentence in Colorado; 12 charges of grand larceny, larceny by bailee, and obtaining money by false pretenses with one sentence of 1 to 10 years in Minnesota; and 6 Dyer Act charges, one of which resulted in a sentence to a federal corrections institution for a term of from 4 months to 4 years. There is no merit to defendant's claim of excessive sentence in light of his record and the maximum sentence of 10 years provided for by section 28-1213, R. R. S. 1943. "A sentence imposed within statutory limits will not be disturbed on appeal unless there is an abuse of discretion." State v. Robinson, 202 Neb. 210, 274 N. W. 2d 553 (1979).

The judgment is affirmed.

AFFIRMED.