STATE OF NEBRASKA, APPELLEE, V. MAURICE COLEMAN, APPELLANT.

490 N.W.2d 222

Filed October 16, 1992.   No. S-91-770.

Thomas M. Kenney, Douglas County Public Defender, and Cheryl M. Kessell for appellant.

Don Stenberg, Attorney General, and Delores Coe-Barbee for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

Following a jury trial, the defendant, Maurice Coleman, was convicted of forgery in the second degree involving more than $300 and was sentenced to a term of imprisonment for not less than 2 years nor more than 4 years. The defendant appeals, assigning as error the court's (1) overruling of his motion to suppress an in-court identification, (2) allowing evidence of uncharged misconduct and prior bad acts into evidence, and (3) imposing an excessive sentence. We affirm.

In determining the correctness of a trial court's ruling on a motion to suppress, an appellate court will uphold the trial court's findings of fact unless those findings are clearly erroneous. *State v. Melton*, 239 Neb. 790, 478 N.W.2d 341 (1992); *State v. Tingle*, 239 Neb. 558, 477 N.W.2d 544 (1991). In determining whether a trial court's findings on a motion to suppress are clearly erroneous, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that the trial court has observed witnesses testifying in regard to such motion. *State v. Melton, supra*; *State v. Tingle, supra*.

In proceedings where the statutes embodying the rules of evidence apply, the admission of evidence is controlled by rule and not by judicial discretion, except where judicial discretion is a factor involved in assessing admissibility. *State v. Timmerman*, 240 Neb. 74, 480 N.W.2d 411 (1992); *State v. Schwartz*, 239 Neb. 84, 474 N.W.2d 461 (1991).

A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court. *State v. Start*, 239 Neb. 571, 477 N.W.2d 20 (1991); *State v. Haynie*, 239 Neb. 478, 476 N.W.2d 905 (1991).

On September 21, 1988, Sherri Sowers was employed as a customer service representative at Baker's Supermarket at 90th and Fort Streets in Douglas County, Nebraska. That evening, she was presented with a Palleton Inc. payroll check by a person unknown to her. She asked for identification and was given a

photo identification card. Sowers recognized the name of the company on the check, which alerted her to the fact that the check should not be cashed because it was a "line-four check." However, she did carry out the procedure of writing the identification number on the check, and she then took both the check and the identification card to the back of the customer service center. She then picked up the telephone to call a manager to alert him to the line-four check. At that time, the person who had presented the check ran from the store. At the trial, Sowers identified the defendant as the person who had presented the check to her.

The police were contacted following the incident, and on September 28, 1988, Sowers was shown an array of six photographs to see if she could identify the person who had attempted to cash the check. She identified the defendant as that person by choosing photograph No. 4.

At a pretrial suppression hearing, and again at trial, the defense objected to Sowers' in-court identification of the defendant, arguing that it was tainted by this out-of-court photographic lineup. The basis of defendant's objection seemed to be that the photograph of himself with a large bandage on his forehead was the only one of the lineup photos in which a bandage appeared. However, there was nothing in the record to tie the fact of a bandage to the defendant or his activities. The objection was overruled.

Jack Belmont, proprietor of Crosstown Jewelry, testified that on September 20, 1988, he had cashed a Palleton payroll check for the defendant, which was subsequently returned to him by the bank. He further testified that on calling the Palleton company, he was informed that the check was one of several check blanks that had been stolen. Belmont further testified that about 6 to 8 weeks prior to trial in the case at bar, just before February 20, 1991, he had been contacted by the defendant to find out if he would accept payment to make this last check good. The defendant's objection to this evidence on the ground of relevance was overruled.

Larry Meyer, owner of Palleton, testified that he was not acquainted with the defendant and that the defendant had never worked for him nor been on the Palleton payroll. He also

identified the two checks involved as containing nonauthentic signatures and as being part of the lot of discontinued checks that had been stolen.

Defendant's complaint as to the suggestiveness of the photo array shown to Sowers and the subsequent tainting of the in-court identification is without merit. "[T]his court has held that whether identification procedures were unduly suggestive and conducive to a substantial likelihood of irreparable mistaken identification is to be determined by a consideration of the totality of the circumstances surrounding the procedures." *State v. Gibbs*, 238 Neb. 268, 273, 470 N.W.2d 558, 563 (1991). The factors to be considered in determining the likelihood of misidentification include (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the degree of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. *State v. Garcia*, 235 Neb. 53, 453 N.W.2d 469 (1990); *State v. Richard*, 228 Neb. 872, 424 N.W.2d 859 (1988).

Sowers testified that she was required to and did request a photo identification when cashing the check. She had a "good look" at the person presenting the check and was able to see his face clearly. She also testified that she was alerted to the fact that she was being presented with a line-four check, which was not to be cashed. She nevertheless completed the procedure of accepting the photo identification card, and she had a good look at the person who handed it to her. She said that she compared the photo identification with the face of the man presenting it, and he appeared to be the same person.

Sowers was told by the police officer who presented the six-photo array to her that she should look carefully and that she should pay attention to faces rather than hairstyles, which could be changed. She was not told that the suspect was among the six in the array, nor that she had to pick anyone. Sowers also testified at trial that the photo identification which was introduced into evidence was a picture of the defendant whom she saw present in the courtroom.

There is no merit to defendant's assignment of error relating

to his identification.

We next consider defendant's claim that allowing evidence of uncharged misconduct and prior bad acts resulted in a denial of the defendant's right to a fair trial.

Defendant refers to a "veritable landslide of evidence tending to show that the defendant was a person of bad character." A part of this landslide refers to testimony relating to defendant's "alleged traffic difficulties." However, the only apparent testimony involving traffic warrants was elicited from Officer Mark Lang on cross-examination by the defense. That argument is without merit.

Defendant next complains that Belmont was "allowed to testify over objection as to a check presented in another instance by the defendant . . . ." The record shows that Belmont did testify, without objection, to the fact that he had cashed a check for the defendant, that he had contacted the Palleton company to inquire about its check, and that he had turned the check over to the Omaha Police Division. The defendant did not object to this testimony, but did proffer an objection when the check was offered in evidence. Objection to the admission of evidence is not timely unless it is made at the earliest opportunity after the ground for the objection becomes apparent. *State v. Rodgers*, 237 Neb. 506, 466 N.W.2d 537 (1991). If a party fails to make a timely objection to evidence, the party waives the right to assert on appeal prejudicial error concerning the evidence received without objection. *State v. Rodgers, supra*.

However, even if the objection was timely, the testimony would have been admissible under Neb. Evid. R. 404(2), Neb. Rev. Stat. § 27-404(2) (Reissue 1989), which states that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Evidence of other crimes, wrongs, or acts may be admitted where the evidence is so related in time, place, and circumstances to the offense charged as to have substantial

probative value in determining the accused's guilt of the offense in question. *State v. Ruyle*, 234 Neb. 760, 452 N.W.2d 734 (1990).

In *State v. Johnson*, 205 Neb. 778, 781, 290 N.W.2d 205, 207 (1980), this court found that "[i]n a forgery case involving a patterned plan of operation, evidence of prior similar acts committed within 1 month before the act charged is relevant." Evidence of other crimes, wrongs, or acts is admissible for the purpose of establishing identity or a particular method of operation. *State v. Evans*, 235 Neb. 575, 456 N.W.2d 739 (1990). These authorities are applicable in this case.

Finally, the statutory punishment for forgery in the second degree is imprisonment of from 1 to 20 years, a fine of $25,000, or both such fine and imprisonment. A sentence imposed within statutory limits will not be disturbed on appeal in the absence of an abuse of discretion. *State v. Start*, 239 Neb. 571, 477 N.W.2d 20 (1991). An abuse of discretion takes place when the trial court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *State v. Crowdell, ante* p. 216, 487 N.W.2d 273 (1992); *State v. McCaslin*, 240 Neb. 482, 482 N.W.2d 558 (1992).

The sentencing court noted that the defendant's presentence report contained a record of many police contacts dating back to 1976, including two felony convictions. The court also found that based upon the defendant's past history, there was a substantial risk that during any period of probation, he would continue to engage in criminal conduct.

There is no error in the record, and the judgment of the district court is affirmed.

AFFIRMED.