STATE OF NEBRASKA, APPELLEE, V. CARLA PHILIPPS, APPELLANT.
496 N.W.2d 874

Filed March 12, 1993.    No. S-91-1016.

Mark E. Ford for appellant.

Don Stenberg, Attorney General, and J. Kirk Brown for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and LANPHIER, JJ.

PER CURIAM.

Pursuant to a plea bargain, the defendant-appellant, Carla Philipps, pled nolo contendere to and was adjudged guilty of two counts of attempted theft of property of a value less than $1,000, in violation of Neb. Rev. Stat. §§ 28-201 and 28-511 (Reissue 1989), and one count of theft of property valued at less than $300, in violation of § 28-511. As Class I misdemeanors, § 28-201 and Neb. Rev. Stat. § 28-518 (Reissue 1989), each count carries a maximum penalty of up to 1 year's imprisonment and a $1,000 fine. Neb. Rev. Stat. § 28-106 (Reissue 1989). The district court sentenced Philipps to a term of 1 year's imprisonment on each count, the sentences to run concurrently. Philipps appealed, asserting that the sentences were excessive. The Nebraska Court of Appeals agreed and vacated the sentences, remanding the cause to the district court with the direction that Philipps be sentenced to probation under such terms and conditions as the district court deemed appropriate. The plaintiff-appellee State successfully petitioned this court for further review; we reverse the judgment of the Nebraska Court of Appeals and remand the cause to that court with the direction that it affirm the judgment of the district court.

Philipps was employed by a Lincoln car washing business for nearly 5 years. Her tasks included bookkeeping, keeping the daily receipts, making deposits, and handling money. In early April 1991, she told the assistant manager that the cash register was $350 short. This event caught the attention of the owner of the business, who, on or about April 23, 1991, began closely examining the daily receipts. On that very day, he discovered a shortage of $150 cash. He then began going back through the books over a period of 3 years and discovered a deficit of $350 on both November 8, 1989, and June 11, 1990.

The owner contacted the Lincoln police, who then talked with Philipps. Philipps admitted taking money on April 23, 1991, and opened her purse to reveal $1,080, which she handed over to the police. The money included amounts taken on occasions other than April 23. Philipps also admitted taking money on November 8, 1989, and June 11, 1990.

Although the owner originally estimated that $24,000 could

have been stolen from his business, he, the prosecutor, defense counsel, and Philipps arrived at $10,000 as an approximation of the total amount Philipps had pilfered during her employment. In an effort to make restitution, Philipps turned over to her former employer her profit-sharing program funds, totaling $7,960.14. Also returned was the $1,080 confiscated from Philipps at the time of her arrest, and Philipps paid an additional $959.86 on August 16, 1991.

Philipps has no prior criminal record, took the money because of financial pressures arising at least in part from family medical expenses and home repairs, appeared remorseful, and was, at the time of sentencing, 29 years old and pregnant.

Neb. Rev. Stat. § 29-2308 (Cum. Supp. 1992) provides:

> In all criminal cases that now are or may hereafter be pending in the Court of Appeals or Supreme Court, the appellate court may reduce the sentence rendered by the district court against the accused when in its opinion the sentence is excessive, and it shall be the duty of the appellate court to render such sentence against the accused as in its opinion may be warranted by the evidence. No judgment shall be set aside, new trial granted, or judgment rendered in any criminal case on the grounds of misdirection of the jury or the improper admission or rejection of evidence or for error as to any matter of pleading or procedure if the appellate court, after an examination of the entire cause, considers that no substantial miscarriage of justice has actually occurred.

Relying on the foregoing statute, the Court of Appeals concluded that notwithstanding that the district court had not abused its discretion in sentencing Philipps as it did, the Court of Appeals nonetheless had the statutory duty to reduce the sentences because it deemed them excessive. In doing so, the Court of Appeals cited *State v. Spiegel*, 239 Neb. 233, 474 N.W.2d 873 (1991), which recites that this court may reduce a sentence which in its opinion is excessive, and *State v. Foutch*, 196 Neb. 644, 244 N.W.2d 291 (1976), which proclaims that § 29-2308 authorizes this court to reduce a sentence which appears excessive.

However, the statements in *Foutch* and *Spiegel* must be read in the context of the longstanding and consistently applied rule that a sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion. See, e.g., *State v. Reynolds, ante* p. 874, 496 N.W.2d 872 (1993); *State v. Riley, ante* p. 887, 497 N.W.2d 23 (1993); *State v. Tucker, ante* p. 336, 494 N.W.2d 572 (1993); *State v. Hall, ante* p. 92, 492 N.W.2d 884 (1992); *State v. Coleman*, 241 Neb. 731, 490 N.W.2d 222 (1992); *State v. Kincaid*, 203 Neb. 495, 279 N.W.2d 152 (1979).

Indeed, the abuse of discretion standard was found to be intertwined with that of excessiveness at least as early as 1954 in *Taylor v. State*, 159 Neb. 210, 66 N.W.2d 514 (1954), wherein we wrote: "Contrary to defendant's contention, we find nothing in the record before us which could lawfully sustain a conclusion that the trial court abused its discretion and thereby imposed an excessive sentence upon defendant." *Id*. at 215, 66 N.W.2d at 517. See, also, *State v. Etchison*, 188 Neb. 134, 195 N.W.2d 498 (1972) (sentence within statutory limits ordinarily not disturbed unless abuse of discretion occurs; when sentence excessive or not warranted by evidence, § 29-2308 contemplates correction on appeal).

Nor is the fact that on occasion this court has referred to sentences imposed in other cases as a means of illustrating an abuse of discretion, see, e.g., *State v. Haynie*, 239 Neb. 478, 476 N.W.2d 905 (1991), to be interpreted as meaning that in a nondeath sentence an appellate court is to conduct a de novo review of the record to determine whether a sentence is proportionate and thus appropriate. *State v. Reynolds, supra*; *State v. Riley, supra*; *State v. Hall, supra*. As noted in *State v. Sianouthai*, 225 Neb. 62, 402 N.W.2d 316 (1987), the issue in reviewing a sentence is not whether someone else in a different case received a lesser sentence, but whether the defendant in the subject case received an appropriate one. Moreover, to the sentencing court and not to an appellate court is entrusted the power to impose sentences for the commissions of crimes against the State; the judgment of the sentencing court cannot be interfered with in the absence of an abuse of discretion. See *State v. Hall, supra*.

In rejecting the defendant's argument that § 29-2308 impowered this court to reduce a sentence which in its opinion was excessive, we, in *State v. Orner*, 192 Neb. 523, 222 N.W.2d 819 (1974), wrote:

> The thrust of the defendant's argument is to the effect that this court should sit as an original sentencing court and to determine de novo what the sentence should be. This court has consistently held, as we have noted, that the standard of review in this court is whether there has been an abuse of discretion by the lower court. This court construed the meaning of section 29-2308, R.R.S. 1943, in the case of Bell v. State, 159 Neb. 474, 67 N.W.2d 762, when it said as follows: "Section 29-2308, R.R.S. 1943, which authorizes the Supreme Court to reduce a sentence when in its opinion the sentence is excessive, was not intended by the Legislature as a directive to the court to reduce the sentence in every instance where it is asked, but only in those cases where it is apparent that the *trial court has abused its judicial discretion and fixed a penalty which is clearly excessive.*"

(Emphasis in original.) *Id.* at 524, 222 N.W.2d at 820. See, also, *State v. Cano*, 191 Neb. 709, 217 N.W.2d 480 (1974).

An abuse of discretion takes place when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *State v. Reynolds, supra*; *State v. Riley, supra*; *State v. Hall, supra*; *State v. Coleman, supra*. In imposing a sentence, a sentencing court is to consider the defendant's age, mentality, education, experience, and social and cultural background, as well as her or his past criminal record or law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime. *State v. Reynolds, supra*; *State v. Riley, supra*; *State v. Tucker, supra*; *State v. McCaslin*, 240 Neb. 482, 482 N.W.2d 558 (1992); *State v. Haynie, supra*.

In imposing the sentences at issue, which are within the statutory limits, the district court, acting in accordance with Neb. Rev. Stat. § 29-2260 (Reissue 1989), stated:

> Having regard for the nature and circumstances of the

crimes, and the history, character and condition of the defendant, the Court finds that imprisonment of the defendant is necessary for the protection of the public because a lesser sentence would depreciate the seriousness of the defendant's crimes and would promote disrespect for the law.

Notwithstanding Philipps' pregnancy and lack of a criminal record, the facts are that she stole from one who placed his trust in her and, through her plea bargain, escaped prosecution as a felon for her violation of that trust.

As the Nebraska Court of Appeals itself concluded, the sentences at issue do not constitute an abuse of discretion. Having so concluded, the analysis of the Nebraska Court of Appeals should have ended and it should have affirmed the judgment of the district court.

Accordingly, as written in the first paragraph of this opinion, we reverse the judgment of the Nebraska Court of Appeals and remand the cause to it with the direction that it affirm the judgment of the district court.

REVERSED AND REMANDED WITH DIRECTION.

FAHRNBRUCH, J., not participating.

SHANAHAN, J., dissenting.

The majority correctly notes that the appellate standard of review in examining an excessive sentence claim is whether the sentencing court abused its discretion in the sentence imposed. However, as pointed out by the State in its petition for further review, the question remains whether the sentence imposed on Carla Philipps must be affirmed in "deference" to the district court which was "in the best position to observe and evaluate the history and current attitude" of a convicted defendant. If an appellate court yields to a sentencing court's judgment for the reason expressed by the State, then a meaningful appellate review of a sentence imposed is but an illusory aspect of due process. For that reason, lest Carla Philipps' appeal become nothing more than a semantic spree, this court should have determined whether the sentencing court abused its discretion by an excessive sentence imposed on Philipps.

Carla Philipps was 29 years of age when she committed the

offenses, and was 30 years old when she was sentenced. Carla's first marriage ended in divorce in November 1985. During that marriage, Carla had two daughters, one of whom is now 11 years old, while the other is 7. Under the divorce decree, Carla's former husband was ordered to pay $200 per month as child support for their daughters, but, by 1991, he was $11,000 delinquent in child support.

Carla married Robert Philipps in 1988. Philipps' son by another marriage also lives with Carla, Robert, and Carla's daughters. I assume that there has been still another addition to the Philipps family, for the record states that Carla was pregnant when sentenced in September 1991 and expected to deliver her child in January 1992.

Carla has no criminal record, is a high school graduate, and has attended a community college where she maintained a GPA of 3.5 on a 4.0 scale. Before committing the offenses charged against her, Carla attended church regularly, took her daughters to Sunday school, and participated in church and school activities. None of her friends has a criminal record.

Carla's husband, Robert, an electrician's apprentice, is sent to a new job location every 6 months, requiring that he be away from home for "extended periods of time," sometimes "weeks at a time."

Extensive medical expenses have been incurred for Robert Philipps' son which are not covered by medical insurance. Carla and Robert owe nearly $7,000 for various reasons, including dental expenses and repairs to their house. Monthly house payments are $533. During her pregnancy, and while awaiting sentencing, Carla obtained a part-time job to help her family. Quite obviously, financial stress on her family was a substantial factor prodding Carla to misappropriate funds from her employer.

Before sentencing, and as acknowledged by both the State and court, Carla made full restitution of $10,000 to her employer. Through her lawyer at the sentence hearing, Carla Philipps asked for a sentence of probation, including electronic monitoring in her home if the court believed that such monitoring was necessary under the circumstances. The probation program available for Carla Philipps was

comprehensive and stringent but reasonable. The sentencing court readily acknowledged: "I am confident that you wouldn't disappoint me on probation. I am confident that you would successfully complete probation." Nevertheless, the court sentenced Carla to 1 year in the Nebraska Center for Women at York because the sentencing judge felt an "obligation to see that the mores, the morals and the standards of society are protected, and the only way that society is protected in that regard is for me to sentence or punish, I mean, somebody so that a message is sent out."

The statutory standard for sentencing contains 11 grounds which "shall be accorded weight in favor of withholding [a] sentence of imprisonment," including the six following factors:

(f) The offender has compensated or will compensate the victim of his or her crime for the damage or injury the victim sustained;

(g) The offender has no history of prior delinquency or criminal activity and has led a law-abiding life for a substantial period of time before the commission of the crime;

(h) The crime was the result of circumstances unlikely to recur;

(i) The character and attitudes of the offender indicate that he or she is unlikely to commit another crime;

(j) The offender is likely to respond affirmatively to probationary treatment; and

(k) Imprisonment of the offender would entail excessive hardship to his or her dependents.

Neb. Rev. Stat. § 29-2260(3) (Reissue 1989).

Also, more recently, the Nebraska Legislature, referring to a program of intensive supervision as part of a sentence of probation, has expressed its legislative intent and Nebraska's public policy regarding sentencing:

The Legislature finds and declares that intensive supervision probation programs are an effective and desirable alternative to imprisonment. It is the Legislature's intent to encourage the establishment of programs for the intensive supervision of selected probationers. It is further the intent of the Legislature that

such programs be formulated to protect the safety and welfare of the public in the community where the programs are operating and throughout the State of Nebraska.

Neb. Rev. Stat. § 29-2262.02 (Cum. Supp. 1992). The foregoing statutory expression is bolstered by the conclusion that probation is preferable to punishment by imprisonment because probation:

(1) maximizes the liberty of the individual while vindicating the authority of the court; (2) eases the reintegration of the offender into the community; (3) minimizes the hidden costs that imprisonment places on the family of the offender, in the form of both reduced income and enforced separation; and (4) is the most economic form of correctional supervision.

ABA Standards for Criminal Justice at 18.75-76 (2d ed. 1986).

According to the U.S. Supreme Court, the basic purpose of probation is

to provide an individualized program offering a young or unhardened offender an opportunity to rehabilitate himself without institutional confinement under the tutelage of a probation official and under the continuing power of the court to impose institutional punishment for his original offense in the event that he abuse this opportunity.

*Roberts v. United States*, 320 U.S. 264, 272, 64 S. Ct. 113, 117, 88 L. Ed. 41 (1943). See, also, *Burns v. United States*, 287 U.S. 216, 220, 53 S. Ct. 154, 155, 77 L. Ed. 266 (1932): probation is "designed to provide a period of grace in order to aid the rehabilitation of a penitent offender"; Arthur W. Campbell, Law of Sentencing § 5:1 at 100 (2d ed. 1991): the basic goal of probation "is to deter crime by rehabilitating unhardened offenders."

Thus, the objective of sentencing is to individualize the sentence imposed, judging the offender and not just punishing for the offense, or, as Cicero observed some 2,000 years ago: "The punishment shall fit the offense," but "[c]are should be taken that the punishment should not be out of proportion to the offense." In that manner, the punishment should fit both

the offense and the offender to avoid disproportionality between the offense and a sanction for the violation.

As the U.S. Supreme Court has instructed: "It is necessary to individualize each case, to give that careful, humane and comprehensive consideration to the particular situation of each offender . . . ." *Burns v. United States*, 287 U.S. at 220, 53 S. Ct. at 155-56. Moreover, "the punishment should fit the offender and not merely the crime." *Williams v. New York*, 337 U.S. 241, 247, 69 S. Ct. 1079, 1083, 93 L. Ed. 1337 (1949).

On appeal, when Carla claimed that her sentence was excessive, especially in view of her growing family and the family's needs, the State responded: "The fact is that Philipps' breeding habits are wholly irrelevant." Brief for appellee at 6. To refer to parenthood in terms of "breeding habits," likening a human being to some beast or type of livestock, is absolutely outrageous and indefensible, although such unreasonableness does supply insight into the State's view of the sentencing process.

Most assuredly, no one, including Carla Philipps, believes that taking money from one's employer is "business as usual" and, therefore, should go without punishment. However, the severity of the sentence imposed on Carla Philipps appears rather curious when it is compared to sentences imposed on some others. For instance, as reflected in *State v. Jordan*, 240 Neb. 919, 485 N.W.2d 198 (1992), Jordan was initially charged in a two-count information for felony thefts of property valued between $300 and $1,000 and, therefore, was charged with commission of a Class IV felony in each count. A Class IV felony is punishable by a term of 5 years as the maximum imprisonment on conviction and no minimum term of imprisonment. See Neb. Rev. Stat. § 28-105(1) (Reissue 1989). As the result of a plea bargain, the State dismissed one count against Jordan. The district court for Lancaster County, in fact, the same judge who sentenced Carla Philipps, sentenced Jordan to probation with residential electronic monitoring in addition to other standard provisions for probation. Jordan made restitution for his felony theft; Carla Philipps made restitution for her misdemeanor convictions. Jordan's restitution was a factor for probation; restitution in Carla

Philipps' case did not avoid imprisonment, notwithstanding that the sentencing court expressed no doubt whatsoever that Carla Philipps would comply with whatever might be contained in a probation order. Just as curious is the case of Daniel Muratella who was initially charged with intending to distribute cocaine in his possession, a Class II felony punishable by imprisonment for 1 to 50 years, but who later entered his guilty plea to the reduced charge of simple possession of cocaine, a Class IV felony. Muratella was sentenced to probation by the district court for Lancaster County. Muratella's probation included electronic monitoring in his residence. See *State v. Muratella*, 240 Neb. 567, 483 N.W.2d 128 (1992). Muratella got probation for a felony drug conviction; Carla Philipps got a jail term for misdemeanor theft. This does not imply that the sentencing courts in *Jordan* or *Muratella* were incorrect in the sentences imposed in those cases. Rather, in *State v. Riley, ante* p. 887, 893, 497 N.W.2d 23, 27 (1993), we noted that, although a comparative analysis of sentences is not mandatory in examining an excessive sentence claim, comparative analysis may be used "to validate an initial judgment that a sentence is so grossly disproportionate to the crime as to be excessive."

Thus, while this court has rejected a mandatory comparative analysis and proportionality review in reference to an excessive sentence claim, the mind boggles and then blushes when the sentence imposed on Carla Philipps is placed beside the sentences of probation for Jordan and Muratella.

In Carla Philipps' case, the sentencing court completely ignored her past life and habits as important factors for determination of an appropriate sentence. Moreover, 6 of the 11 factors in § 29-2260, favoring probation over imprisonment, are present in Carla Philipps' case. The record contains nothing to indicate that Carla Philipps' offenses received any notoriety. Regarding a "message" sent by imprisonment of Carla Philipps, the Nebraska Court of Appeals made a common sense observation:

> Imprisoning a woman who works in a carwash seems unlikely to have any deterrent effect on those in positions of substantial trust, power, and influence who might be tempted to help themselves to substantial funds entrusted

to their care. This is not to excuse in any way Philipps' behavior or the seriousness of the crime that she has committed. It is, however, to say that the deterrent effect to others which might occur from her imprisonment is quite minimal.

*State v. Philipps*, 1 NCA 1251, 1255 (1992). In the same vein, there is

doubt whether most sentences ever register on the consciousness of the community. Only a smattering of the thousands of sentences imposed each day throughout the nation are reported in the mass media. Even the few sensational cases that are reported seldom present the judge's sifting of subtle competing factors, particularly those found in confidential reports and studies.

Arthur W. Campbell, Law of Sentencing § 2:3 at 27 (2d ed. 1991). Since the mores and morals of Lancaster County did not, at last report, disintegrate as the result of the sentences of probation granted to Jordan and Muratella, it is extremely unlikely that allowing Carla Philipps to remain with her family through probation would unravel the county's moral fabric.

Moreover, offenders sentenced to probation can be supervised at a fraction of the cost for their incarceration and can continue to support their own families. Nevertheless, Philipps was sentenced to 1 year's imprisonment. Currently, the State spends $68.89 per day to maintain a prisoner in the Nebraska Center for Women. Consequently, it will cost the State between $12,500 and $25,000 to keep Carla Philipps behind bars, depending on whether she serves the full term of her 1 year sentence or is released after serving the minimum time of incarceration. See Neb. Rev. Stat. § 83-1,107 (Cum. Supp. 1992).

There is every reasonable indication that probation with a prudent program of rehabilitation will eliminate Carla Philipps' criminal inclination because "the best way to discourage criminal activity is to offer skills, motivation, and employment opportunities that will reorient offenders toward socially productive behavior." Campbell, *supra* § 2:4.

In conclusion, there was an abuse of discretion by imposing an excessive sentence on Carla Philipps. The Nebraska Court of

Appeals was correct in remanding Carla Philipps' case to the district court for a sentence of probation. "The quality of mercy is not strain'd" in Carla Philipps' case; it's ruptured.

LANPHIER, J., joins in this dissent.