STATE OF NEBRASKA, APPELLEE, V. ROBERT L. WHITE, APPELLANT.
507 N.W.2d 654

Filed October 12, 1993.   No. A-92-826.

Robert J. Sivick for appellant.

Don Stenberg, Attorney General, and Donald A. Kohtz for appellee.

CONNOLLY, MILLER-LERMAN, and WRIGHT, Judges.

CONNOLLY, Judge.
This appeal arises from the appellant's conviction and prison sentence of 2 to 5 years for first degree sexual assault under

Neb. Rev. Stat. § 28-319(1)(a) (Reissue 1989). The appellant, Robert L. White, challenges the sufficiency of the evidence, the admissibility of the testimony of Dr. Carlos Dardon, the admissibility of the testimony of the victim pertaining to her father's disability and her financial support of the family, and the alleged excessiveness of the sentence imposed by the trial court. We affirm.

## I. FACTS

The 17-year-old female victim testified at trial that she was working at Amigo's Restaurant at 90th and Fort Streets in Omaha when she was sexually assaulted by White, the shift supervisor, near or just after the close of the shift at 2 a.m. on July 6, 1991. The victim testified that White approached her from behind and pulled down her pants. The victim pulled her pants back up. White spun her around and began rubbing his body against her body. He then forced the victim to the floor, restrained her wrists in a very tight grip, and proceeded to kiss her and fondle her breasts. According to the victim, White next removed her pants, pushed her underwear aside, and placed his finger into her vagina. After White released her, the victim finished her work duties and went home.

Later the same morning, the victim reported the assault to her mother, and then to police officers. She quit working at Amigo's that day.

### 1. EXPERT TESTIMONY

The victim saw Dr. Gerald Matzke, a family physician, on July 9. Dr. Matzke testified that the victim told him that she had been attacked at work and that her attacker had removed her pants, held her down by her wrists, and ejaculated on her leg. Dr. Matzke testified that in his physical examination of the victim, he discovered tenderness and soreness in her wrists, scratches on her upper back that were less than a week old, tenderness over her spine on the front part of the pelvic bone and through the hipbones, and discomfort in her "mid lower back." Dr. Matzke did not ask about digital penetration, and the victim did not volunteer any information about digital penetration. While he found no evidence of trauma in the victim's vaginal area, Dr. Matzke pointed out that digital

penetration probably would not cause trauma perceptible to the eye. Regarding the soreness of the victim's hipbones, Dr. Matzke said, "From what I understood from her telling me, it possibly could have happened from the alleged assailant being on her, on top of her or against her forcefully." Dr. Matzke testified that he was experienced in examining sexual assault victims and that the victim's physical injuries and anxious manner were not inconsistent with her claim of having been sexually assaulted.

Dr. Matzke also testified that the victim told him that there had been another incident with White approximately 1 week prior to the incident for which she was being examined.

On July 8, the victim was treated by Dr. Dardon, a psychiatrist. The victim had seen Dr. Dardon on previous occasions, as evidenced by the following excerpt from Dr. Dardon's trial testimony:

[State:] And how is it that you're familiar with [the victim]?

[Dardon:] [The victim] came in to see me the first time in August of 1991.

[State:] Okay. Doctor, was it 1991 that she first saw you?

[Dardon:] Or 1990, I'm sorry. It's almost three years now.

[State:] Had she been seeing a previous psychiatrist, too?

[Dardon:] She had seen another psychiatrist, Dr. Egan, for about a year prior to the time when she came in to see me.

[State:] All right. And, Doctor, without going into the details of it, can you tell us the general reason as to why she came to your office for treatment?

[Defense:] Your Honor, I object on relevance grounds.

[Court:] Overruled.

[Dardon:] I believe I started seeing her father first. He had been involved in a car accident and had severe brain damage. At some point they felt that perhaps I could help her better, so they brought her in.

[State:] And for what purpose did they bring her in?

[Dardon:] She was having different psychiatric problems stemming from the car accident, from the trauma.

The direct examination of Dr. Dardon then moved to the victim's July 8, 1991, appointment for treatment of the victim's trauma in the wake of the assault on July 6. Over objection by way of a motion in limine filed by White, Dr. Dardon related the victim's medical history as told to him by the victim, including the details of the sexual assault by White.

### 2. FAMILY FINANCIAL SUPPORT BY VICTIM

On direct examination, the victim testified that White had sexually assaulted her on two occasions prior to July 6. Before asking the victim to relate the details of the prior alleged assaults, the prosecutor asked the victim why she gave her Amigo's paychecks to her parents. The court sustained an objection by defense counsel on relevance grounds. In a bench conference, the prosecutor argued that his question about the paychecks was intended to show that the victim was under pressure to maintain her job at Amigo's. According to the prosecutor, the pressure to provide financial support for her family accounted for the victim's decision to remain at Amigo's and not report to the police the two prior incidents of alleged sexual assault by White. Defense counsel responded that unless the victim's continued employment at Amigo's and failure to report the two prior alleged assaults were raised on cross-examination, the victim's role as a contributor to the family's finances was not relevant. The court made the following ruling: "The offer is overruled. You may pose other questions that relate to that." Soon thereafter, the prosecutor asked the victim if she helped support the family with her Amigo's paychecks. Again, defense counsel objected on relevance grounds. The objection was overruled, and the victim responded, "I gave my checks to my parents to help them."

### 3. DEFENDANT'S TESTIMONY

White denied having had any physical contact with the victim. He acknowledged having given her a clean shirt to put on at the close of the work shift in the early morning hours of July 6, but claimed he did so because of a dirt mark on the front

of the shirt the victim had been wearing, not because of the obvious dirt marks on the back of the shirt. The victim testified that White gave her the clean shirt and said, " '[H]ere is a clean shirt so your mom won't think anything.' " White also acknowledged that the victim's mother had arranged a meeting in late May 1991 which included the victim, White, and supervisory personnel from Amigo's to ensure that the victim would no longer be scheduled to work the closing shift with White. The victim's mother had arranged the meeting after the victim had told her mother that White had forced himself on her with incessant kissing during a closing shift in late May.

## 4. JUDGMENT

White was found guilty as charged and was sentenced to a prison term of 2 to 5 years.

## II. ASSIGNMENTS OF ERROR

White argues that the trial court erred in (1) determining that there was sufficient evidence to allow the case to go to the jury, (2) allowing the unfairly prejudicial testimony of Dr. Dardon, (3) allowing the victim to testify as to her father's disability and her financial support of the family, and (4) imposing an excessive sentence on White.

## III. STANDARD OF REVIEW

### 1. EXPERT WITNESS TESTIMONY

The determination of whether an expert's testimony or opinion will be helpful to a jury or assist the trier of fact in accordance with Neb. Evid. R. 702, Neb. Rev. Stat. § 27-702 (Reissue 1989), involves the discretion of a trial court, whose ruling on the admissibility of an expert's testimony or opinion will be upheld on appeal unless the trial court abused its discretion. *State v. Reynolds*, 235 Neb. 662, 457 N.W.2d 405 (1990).

### 2. SUFFICIENCY OF THE EVIDENCE

In determining whether evidence is sufficient to sustain a conviction in a jury trial, an appellate court does not resolve conflicts of evidence, pass on credibility of witnesses, evaluate explanations, or reweigh evidence presented to a jury, which are

within a jury's province for disposition. A verdict in a criminal case must be sustained if the evidence, viewed and construed most favorably to the State, is sufficient to support that verdict. *State v. Schumacher*, 240 Neb. 184, 480 N.W.2d 716 (1992).

On a claim of insufficiency of evidence, an appellate court will not set aside a guilty verdict in a criminal case where such verdict is supported by relevant evidence. Only where evidence lacks sufficient probative force as a matter of law may an appellate court set aside a guilty verdict as unsupported by evidence beyond a reasonable doubt. *Id*.

### 3. EXCESSIVE SENTENCE

When a sentence imposed by a court is within the statutorily prescribed limits, an appellate court will not disturb the sentence unless there has been an abuse of discretion. *State v. Philipps*, 242 Neb. 894, 496 N.W.2d 874 (1993).

An abuse of discretion occurs when a sentencing court's reasonings or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *Id*.

### IV. ANALYSIS

### 1. DR. DARDON'S TESTIMONY

Under Neb. Evid. R. 803(3), Neb. Rev. Stat. § 27-803(3) (Reissue 1989), statements made by a declarant for purposes of medical diagnosis or treatment and describing medical history, or the inception or general character of the cause or external source of the declarant's medical problem insofar as reasonably pertinent to diagnosis or treatment, are not excluded by the hearsay rule, even though the declarant is available as a witness. The question of whether statements made to a psychiatrist qualify as a hearsay exception under Neb. Evid. R. 803(3) has not been addressed in Nebraska. However, in interpreting Fed. R. Evid. 803(4), which is virtually identical to Neb. Evid. R. 803(3), the U.S. Court of Appeals for the Eighth Circuit has determined that statements made to a trained social worker or psychologist qualify as hearsay exceptions under Fed. R. Evid. 803(4). See *U.S. v. Balfany*, 965 F.2d 575 (8th Cir. 1992). In *Morgan v. Foretich*, 846 F.2d 941 (4th Cir. 1988), the defendant argued that the victim's statements to a psychologist who

testified as an expert witness were inadmissible because the psychologist was consulted in order to testify as a witness rather than for treatment of the victim. The U.S. Court of Appeals for the Fourth Circuit nonetheless stated that the hearsay exception for statements to physicians applies equally to psychiatrists and psychologists and went so far as to hold that the statements of a victim made to a psychologist are admissible even if the examination during which the statements were made was conducted for the purpose of diagnosis to prepare the psychologist for court testimony rather than for the purpose of treating the victim.

Despite the federal authority recognizing a hearsay exception for statements made to a psychiatrist, in the context of the instant case we are unwilling to fashion a rule that could lead to a standard operating procedure in which any sexual assault victim is sent to a psychiatrist to tell his or her story so that the psychiatrist can then retell the victim's story to the jury and thereby bolster the credibility of the victim's story by virtue of the psychiatrist's expert, professional status. Therefore, we decline to apply the rationales of *Balfany* and *Morgan* to the case before us.

We do not suggest that the victim in the case at bar was sent to Dr. Dardon merely to prepare Dr. Dardon for trial testimony. The record indicates that the victim went to Dr. Dardon for treatment of the trauma resulting from the alleged assault. We also note that a doctor-patient relationship already existed between the victim and Dr. Dardon before the appointment relating to the alleged assault. However, we still decline to recognize a hearsay exception under Neb. Evid. R. 803(3) that would permit Dr. Dardon to relate to the jury the victim's statements to him during treatment.

While there may be a place for the psychiatrist exception in Nebraska law, this is not the case that establishes that place. In this case, there was a competent 17-year-old witness who was quite capable of telling the jury her version of the alleged assault. Before Dr. Dardon testified, the jury heard from Dr. Matzke, who related to the jury the victim's version of the alleged assault. We agree with the argument proffered during trial by defense counsel in his oral motion in limine attempting

to block the testimony of Dr. Dardon. Defense counsel pointed out that one expert witness, Dr. Matzke, had already told the victim's story to the jury. Another expert witness, Dr. Dardon, once again telling the victim's story of the assault would constitute cumulative evidence. Furthermore, the probative value of that evidence would be outweighed by its potential for unfair prejudice. See Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 1989). For these reasons, we find that the trial court erred in allowing Dr. Dardon to restate to the jury the statements made to him by the victim while she was being treated by Dr. Dardon.

We reject White's claim that the revelation during Dr. Dardon's testimony that the victim's father had suffered brain damage so distorted the jury's perception of the victim in her favor that White's right to a fair trial was compromised. The passing mention of the condition of the victim's father was a small part of the background information on the doctor-patient relationship between Dr. Dardon and the victim, and the prosecutor did not dwell on it. Therefore, we find that the reference to the father's condition was not prejudicial.

## 2. HARMLESS ERROR

An appellate court may affirm the trial court's judgment if an error in the admission of evidence was harmless beyond a reasonable doubt. See *State v. Christian*, 237 Neb. 294, 465 N.W.2d 756 (1991). Harmless error exists when there is some incorrect conduct by the trial court which, on review of the entire record, did not materially influence a jury in a verdict adverse to a substantial right of the defendant. *State v. Coleman*, 239 Neb. 800, 478 N.W.2d 349 (1992).

Having reviewed the entire record, we do not believe White was prejudiced by the admission of Dr. Dardon's testimony. Dr. Dardon's testimony was cumulative. If Dr. Dardon's testimony was the only evidence in the record corroborating the alleged assault, there would be a greater chance of prejudice resulting from his testimony. However, even if we erase Dr. Dardon's testimony from the record, we still have the properly admitted testimony of Dr. Matzke to corroborate the victim's description of the alleged assault. This

case is not analogous to *Chapman v. California*, 386 U.S. 18, 25-26, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967), described by the Court as a case "in which, absent the . . . forbidden comments, honest, fair-minded jurors might very well have brought in not-guilty verdicts." Given the testimony of the victim about the alleged assault, the testimony of Dr. Matzke, and the physical evidence, we do not believe the verdict of the jury would have been different had the testimony by Dr. Dardon not been allowed. Therefore, we find harmless the admission error concerning Dr. Dardon's testimony.

### 3. FINANCIAL SUPPORT OF THE FAMILY

In proceedings where the statutes embodying the rules of evidence apply, the admission of evidence is controlled by rule and not by judicial discretion, except where judicial discretion is a factor involved in assessing admissibility. *State v. Timmerman*, 240 Neb. 74, 480 N.W.2d 411 (1992). Evidence which is not relevant is not admissible. Neb. Evid. R. 402, Neb. Rev. Stat. § 27-402 (Reissue 1989). Evidence is relevant if it has a tendency to make the existence of a fact that is of consequence more or less probable than it would be without the evidence. Neb. Evid. R. 401, Neb. Rev. Stat. § 27-401 (Reissue 1989). To be relevant, evidence must be rationally related to an issue by a likelihood, not a mere possibility, of proving or disproving an issue to be decided. *State v. Coleman, supra.*

Before the victim testified, there had been references by other witnesses to one or possibly two prior, unreported sexual assaults of the victim by White. Immediately after answering the question about what she did with her paychecks, the victim described in detail, without objection by defense counsel, the first of the alleged sexual assaults by White in late May 1991. The victim went on to say that after telling her mother about the May incident, the mother called a meeting involving the victim, White, and supervisory personnel from Amigo's, to ensure that the victim would not work any more closing shifts with White.

Had the prosecutor asked the victim what she did with her paychecks without there having been any testimony concerning the previous incidents either before or after the question was posed, defense counsel's objection on relevance grounds might

have been sustainable on appeal. Perhaps any question about the relevance of the victim's helping with family expenses might have been cleared up by one or two preliminary questions focusing on the alleged prior incidents of sexual assault and on the reason for the victim's decision to continue working at Amigo's and not notify the police about the alleged sexual assaults. Nevertheless, we find that sufficient evidence of at least one prior on-the-job sexual assault was adduced on direct examination to make relevant the prosecutor's question about the victim's contribution to the family budget. Therefore, we find no error in the trial court's admission of the testimony about the victim delivering her Amigo's paychecks to her parents to help support the family.

### 4. SUFFICIENCY OF THE EVIDENCE

When viewed in a light most favorable to the State, the admissible testimony of the State's witnesses and the physical evidence, particularly the shirt with the dirt marks on the back side, constitute evidence sufficient to support the conviction of White. Regardless of whatever evidence White may have offered at trial to characterize himself as innocent, there was sufficient incriminating evidence in the record to allow the jury to find beyond a reasonable doubt that White had sexually assaulted the victim. See *State v. Schumacher*, 240 Neb. 184, 480 N.W.2d 716 (1992).

White places great emphasis on the victim's failure to report the digital penetration of her vagina until July 16, 10 days after the alleged assault, at which time a followup investigator specifically asked the victim whether such a violation had occurred. White suggests that the victim made up the claim of digital penetration to enhance the case against him. The victim claimed that initially she was reluctant to reveal the full extent of the assault because she found it embarrassing. Both explanations are plausible. The jurors observed the witnesses and considered both explanations for the delay in reporting the digital penetration. The verdict indicates that the jury accepted the victim's explanation. This court will not reevaluate the jury's determination of that factual issue.

### 5. Excessive Sentence

First degree sexual assault is a Class II felony punishable by a prison term of 1 to 50 years. See, § 28-319(2); Neb. Rev. Stat. § 28-105(1) (Reissue 1989). We find nothing in the record to indicate that the trial court abused its discretion by sentencing White to a prison term of 2 to 5 years.

AFFIRMED.