STATE OF NEBRASKA, APPELLEE, V. PAUL H. STUTHMAN, APPELLANT.
509 N.W.2d 410

Filed December 7, 1993.   No. A-93-222.

Charles D. Brewster, of Butler, Voigt & Brewster, P.C., for appellant.

Don Stenberg, Attorney General, and Donald A. Kohtz for appellee.

CONNOLLY, IRWIN, and WRIGHT, Judges.

CONNOLLY, Judge.

This appeal arises from the county court's sentencing of the appellant, Paul H. Stuthman, following his conviction for transporting livestock without a valid health certificate. Stuthman was fined $500 and sentenced to a 90-day jail term. He also was ordered to pay restitution in the amount of $2,056.32. The jail term was to be suspended if Stuthman paid the fines, costs, and restitution before the date the jail term was to commence. Stuthman challenges the jail sentence on grounds of excessiveness and the restitution order on grounds of insufficient evidence. We affirm.

## I. FACTS

In August 1988, Stuthman purchased 20 calves in Wisconsin, transported them to Nebraska, and then sold them. Eight of the calves died within days of their sale, and three more died within approximately 1 month. Veterinary examinations of the dead calves revealed that the animals had died because of a failure of the digestive system. There was speculation in the record that the calves may have had Salmonella poisoning, though that possibility was not confirmed.

Stuthman was charged in county court with count I, transporting livestock without a valid health certificate in violation of Neb. Rev. Stat. § 54-788 (Reissue 1988); count II, transporting calves without a valid permit in violation of § 54-792 (Reissue 1988); and count III, selling livestock without a livestock dealer license in violation of § 54-1704 (Reissue 1988). Pursuant to a plea bargain, Stuthman pled nolo

contendere to count I, and the other counts were dismissed.

Stuthman was sentenced by the county court three times. On appeal to the district court, the first two sentences were reversed and remanded. The third sentence—90 days in jail, a $500 fine, and restitution in the amount of $2,056.32—was affirmed. Stuthman appeals the district court's judgment affirming the third sentence imposed by the county court.

Stuthman's notice of appeal challenging his third sentence was filed in the county court August 7, 1992. That same day, Stuthman filed assignments of error in the county court. Also on August 7, Stuthman filed in the county court a praecipe for transcript for use in his appeal to the district court. In the praecipe, Stuthman specified 13 items to be included in the transcript, but he did not specify that the assignments of error be included in the county court transcript to be filed with the district court on appeal.

## II. ASSIGNMENTS OF ERROR

Stuthman argues that the district court erred in affirming the trial court's imposition of a 90-day jail sentence, and in affirming the trial court's order for restitution which, according to Stuthman, was not supported by sufficient evidence in the record.

## III. STANDARD OF REVIEW

When a sentence imposed by a court is within the statutorily prescribed limits, an appellate court will not disturb the sentence unless there has been an abuse of discretion. *State v. Philipps*, 242 Neb. 894, 496 N.W.2d 874 (1993).

An abuse of discretion occurs when a sentencing court's reasonings or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *Id.*

## IV. ANALYSIS

### 1. PRESERVATION OF ERROR

The State argues that Stuthman's assignments of error are not properly before us because the record does not indicate that the assignments of error were filed with the district court, a procedural prerequisite necessary to preserve error for review by this court.

When an appellate court reviews a decision of a district court which affirmed, reversed, or modified a decision of a county court, it will consider only those errors specifically assigned in the appeal to the district court and again assigned as error in the appeal to the higher appellate court. *State v. Erlewine*, 234 Neb. 855, 452 N.W.2d 764 (1990). On the matter of perfecting an appeal to the district court from a judgment rendered in the county court, Neb. Ct. R. of Cty. Cts. 52(I)(G) (rev. 1992) stated that "[w]ithin 10 days of filing a notice of appeal, the appellant shall file *with the district court* a statement of errors . . . ." (Emphasis supplied.) In *State v. Nelson, ante* p. 289, 509 N.W.2d 232 (1993), this court held that an appellant who incorporated his statement of error directly into his notice of appeal filed in the county court satisfied the requirement that the statement of error be filed with the district court because the notice of appeal containing the statement of error was included in the county court transcript filed with the district court on appeal. In *Nelson*, the appellant's statement of error was automatically filed with the district court because a notice of appeal filed in the county court is among the documents that must be included in the transcript on appeal to the district court. See rule 52(I)(B)(1)(c). In the case now before us, the document entitled "Assignments of Error" that Stuthman filed in the county court is not one of those documents automatically included in the transcript on appeal to the district court. See rule 52(I)(B)(1). Indeed, the rules do not require or address the filing of such a document in the county court. Stuthman did not file with the district court his assignments of error, and he did not request that the assignments of error filed in the county court be included in the transcript that went to the district court for appellate review.

The State makes a plausible argument on this issue. However, the transcript certified by the clerk of the district court as the one reviewed by the district court on appeal does contain Stuthman's assignments of error. We confess that we cannot tell from the record how the assignments of error were incorporated into the transcript prepared for appellate review by the district court. Nonetheless, the record indicates that Stuthman's assignments of error were contained in the

transcript reviewed by the district court, and so we rule that they are now properly before this court.

■ As a procedural note, we direct the attention of the practitioner to the amended version of rule 52(I)(G), effective October 27, 1993. From that date on, the statement of errors must be filed with the district court within 10 days of the filing of the *bill of exceptions*, rather than within 10 days of the filing of the notice of appeal.

### 2. JAIL TERM

Stuthman complains about being sentenced to the maximum jail term permissible for transporting livestock without a valid health certificate. We agree with the State that in Nebraska there are strong public policy reasons for penalizing to the utmost violators of laws designed to preserve the health of livestock and to prevent the spread of animal-borne diseases. When we consider that two additional Class III misdemeanors were dismissed and that Stuthman could avoid jail time entirely by paying restitution, we find nothing excessive in the imposition of a conditional 90-day jail sentence.

### 3. RESTITUTION

■ Neb. Rev. Stat. § 29-2281 (Cum. Supp. 1992) states that in criminal cases where restitution is ordered, at the time of sentencing the court may hold an evidentiary hearing to determine the amount of restitution. The Nebraska Supreme Court has stated that an order of restitution unsupported by an evidentiary hearing is suspect:

> [W]e have serious concerns whether, without an evidentiary hearing, the bare statements contained in the [presentence investigation report] are sufficiently reliable to meet § 29-2281, which requires that "[t]he amount of restitution shall be based on the actual damages sustained by the victim and shall be supported by evidence which shall become a part of the court record."

*State v. Yost*, 235 Neb. 325, 329, 455 N.W.2d 162, 164 (1990). In the case before us, the sentencing court conducted an extensive evidentiary hearing on the damages suffered by the victims as a result of purchasing the diseased calves from Stuthman. Contrary to the claims of Stuthman in his brief, the record

supports the sentencing court's conclusion that the damages suffered by the victims resulted directly from the criminal conduct of Stuthman in transporting and selling diseased calves. Calves began dying within 24 hours after the victims had purchased them from Stuthman. The record is replete with copies of invoices and checks that document the victims' transactions with Stuthman and with veterinarians and animal clinics in the effort to save the dying calves. We note that the court did not order restitution in connection with the three calves that survived until sometime in September. The court ordered restitution only in connection with the eight calves that died within days of their purchase in August. We find that the court was very circumspect in calculating the amount of restitution and that there is ample evidence in the record supporting the order of restitution.

Stuthman argues that the court did not give sufficient consideration to the question of whether his earning ability, employment status, financial resources, and other obligations would preclude an order of restitution. See *State v. Yost, supra* (such factors must be considered if restitution is contemplated). This argument is without merit. The record contains a presentence investigation report in which Stuthman stated that he makes $25,000 a year at his job, rents a home from his mother for $300 a year, has no outstanding obligations, and also receives additional income from farming. Stuthman had the opportunity during the evidentiary hearing in March 1991 to draw attention to any factors weighing against a restitution order. At a subsequent sentencing hearing in July 1992, Stuthman could have challenged his financial profile as reflected in the presentence investigation report or raised other factors not mentioned in the report. The record of the July 1992 hearing contains the following colloquy:

> THE COURT: . . . [T]he Court is in possession of the pre-sentence investigative report prepared by the State Probation Office. [Defense counsel], have you had an opportunity to review that?
>
> [Defense counsel]: Yes, your Honor.
>
> . . . .
>
> THE COURT: [Prosecutor], any changes or

corrections?

[Prosecutor]: No, your Honor.

THE COURT: [Defense counsel], do you have any further evidence or any statements you would like to make?

[Defense counsel]: I don't believe so, your [H]onor.

The court considered Stuthman's financial profile as reflected in the presentence investigation report and determined that Stuthman was capable of paying the restitution ordered. The record clearly supports that determination.

AFFIRMED.