STATE OF NEBRASKA, APPELLEE, V. CHRISTOPHER J. MANZER,
APPELLANT.
519 N.W.2d 558

Filed July 29, 1994.   No. S-93-747.

John M. Gerrard, of Gerrard, Stratton & Mapes, P.C., for appellant.

Don Stenberg, Attorney General, and J. Kirk Brown for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ.

BOSLAUGH, J.

On May 27, 1993, as the result of a plea agreement, the defendant, Christopher J. Manzer, pled guilty to second degree murder, assault in the first degree, and use of a firearm to commit a felony.

On July 29, 1993, the district court sentenced the defendant to the following terms of imprisonment: count I, second degree murder, life in prison; count II, assault in the first degree, not less than $6^2/3$ nor more than 20 years, to be served concurrently with the life sentence; and count III, use of a firearm to commit a felony in committing count I, not less than $6^2/3$ nor more than 20 years, to be served consecutively to the prior two sentences.

The defendant has appealed to this court. His sole assignment of error is that the district court erred in imposing excessive sentences. Pursuant to Neb. Ct. R. of Prac. 7B(2) (rev. 1992), the State has filed a motion for summary

affirmance.

After staying up late the night before to work on a paper for school, the defendant rose early on the morning of November 14, 1992, to do his chores at his family's farm. After that, the defendant went to his grandfather's farm near Osmond, Nebraska, and helped haul corn for the remainder of the day.

The defendant returned to his home around 5 p.m. and announced to his parents that he would be going out later that evening. He told his father, Mark Manzer, and his mother, Faye Manzer, that he was going on a date with his girl friend and that he would return home at approximately 1:30 a.m. The defendant's father told him that he should return to the house at 1 a.m.

The defendant drove to Elgin, Nebraska, and picked up his girl friend. The couple went on a double date and spent most of the evening watching television until midnight.

The defendant took his girl friend home and then began the drive to his own home. In Pierce, Nebraska, he was stopped by a police officer for running a stop sign. Upon realizing that he would now be late and arrive at about 1:20 a.m., the defendant decided to kill his family, including himself.

Upon arriving at the family farm, the defendant went to the pumphouse and obtained a 12 gauge shotgun. He then climbed the stairs to his room in an attempt to talk himself out of proceeding with the plan.

When the defendant heard his father get up and then return to bed, he approached his parents' bedroom. He fired once at his father, striking him in the cheek area. The gun then jammed, and the defendant went outside to clear the weapon. His father stumbled into the kitchen area, and the defendant reentered the house, shooting through the door and hitting his father for the second time.

The defendant then entered the kitchen, where his father lay on the floor. The defendant's 15-year-old sister walked out of one of the bedrooms on the second floor. The defendant fired, mistaking his sister for his mother and wounding his sister in the shoulder.

The defendant climbed the stairs in an attempt to find his mother. He came upon a locked room where his two younger

brothers, ages 10 and 12, and his sister were hiding. The defendant fired at the door in order to break the lock and enter the room. His brothers and sister begged the defendant to promise that he would not kill them.

The defendant instructed his sister to call a doctor for her injury; then he went outside to look for his mother, who had escaped out of the children's bedroom window. The defendant did not find his mother, and when he returned to the house, his father was regaining consciousness.

The defendant claimed that after his father called him a "fucking loser," he shot his father pointblank in the head "to put him out of his misery."

The defendant left the premises around 2 a.m. and drove around the countryside, eluding police officers. The defendant attempted to see his girl friend in Elgin. A police officer approached the defendant as he walked on foot toward his girl friend's house. At this point, the defendant turned himself in and told the authorities he was the one who had committed the murder.

The defendant was 1 month short of 18 years old when he committed the offenses. His prior offenses include just four minor traffic violations. Although the defendant was not intoxicated the night of these crimes, the defendant has a history of alcohol problems.

> In *State v. Myers*, 244 Neb. 905, 510 N.W.2d 58 (1994), we held that malice is a necessary element of murder in the second degree and that an instruction that failed to include malice as an essential element of murder in the second degree was plain error and was prejudicial.

*State v. Jones*, 245 Neb. 821, 831, 515 N.W.2d 654, 659 (1994).

In the present case, the amended information, upon which the defendant was arraigned and sentenced, was worded in the language of Neb. Rev. Stat. § 28-304 (Reissue 1989) and did not allege "malice" as a specific element of the crime.

Under the rule of *State v. Myers*, 244 Neb. 905, 510 N.W.2d 58 (1994), the failure to include malice as an element of murder in the second degree is plain error. Accordingly, the judgments on counts I and III must be reversed and the cause remanded for further proceedings.

As to count II, the State's motion for summary affirmance is sustained.

First degree assault is a Class III felony with a penalty of 1 to 20 years' imprisonment, up to a $25,000 fine, or both. The defendant was sentenced to a term of imprisonment of not less than $6\frac{2}{3}$ years nor more than 20 years.

A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion. *State v. Philipps*, 242 Neb. 894, 496 N.W.2d 874 (1993). The sentence for count II is within the statutory limits and under the circumstances of this case is not an abuse of discretion.

JUDGMENTS ON COUNTS I AND III REVERSED
AND REMANDED FOR FURTHER
PROCEEDINGS.
JUDGMENT ON COUNT II AFFIRMED.

WRIGHT, J., dissenting.

I respectfully dissent from the majority's decision, which reversed Manzer's convictions for second degree murder and use of a firearm to commit a felony because the information upon which Manzer was convicted and sentenced did not allege malice as a specific element of the crime of second degree murder.

Manzer was originally charged by information with first degree murder, first degree assault, and two counts of use of a firearm to commit a felony. At a May 27, 1993, hearing, the district court was advised of a plea agreement. Manzer's counsel informed the court that Manzer would plead guilty to second degree murder, first degree assault, and one count of use of a deadly weapon. The court asked both Manzer and the prosecution whether this was their understanding of the plea agreement, and they answered in the affirmative. Thereafter, an amended information was filed with the court, and Manzer waived his right to the service of the amended information and his right to the reading of the amended information.

According to the court's journal entry of the proceedings, Manzer was advised of the nature of the charges and the possible penalties, including an explanation of concurrent and consecutive sentences. He was informed that he was presumed innocent until proven guilty, and his constitutional rights were

explained to him. Manzer acknowledged that he understood the nature of the charges, the possible penalties, and his constitutional rights. He also informed the court that he had had sufficient time to consult with his attorneys before proceeding.

Manzer advised the court that he wished to enter pleas of guilty and that no force, threats of force, or inducements of any kind, other than the plea agreement, were made to cause him to plead guilty. The court was then given a factual basis for the taking of the pleas. Manzer stated that he was satisfied with the representation provided by his attorneys and that he understood he was waiving his rights by pleading guilty to the offenses in the amended information.

The court accepted Manzer's pleas of guilty, finding them to be freely, voluntarily, and intelligently made with full knowledge of the nature of the charges, the possible penalties, and his constitutional rights. Manzer was adjudged guilty of the offenses of second degree murder, first degree assault, and use of a firearm to commit a felony, as alleged in the State's amended information.

From my review of the record, I find no reason to reverse the convictions for second degree murder and use of a firearm to commit a felony. The amended information charged that

> Christopher J. Manzer, late of the county aforesaid, did, on or about the 15th day of November, A.D. 1992, in the County of Pierce, and State of Nebraska aforesaid, intentionally, but without premeditation, kill Mark Manzer; and
>
> COUNT II - did then and there intentionally or knowingly cause serious bodily injury to Joy Manzer; and
>
> COUNT III - did then and there use a firearm or other deadly weapon to commit a felony which may be prosecuted in the court of this State, to wit: shotgun used in shooting Mark Manzer.

The majority has found that the amended information was insufficient because it did not include malice as an element of second degree murder.

In *State v. Myers*, 244 Neb. 905, 510 N.W.2d 58 (1994), the court held that malice is an essential element of second degree

murder and that it was plain error for the trial court to omit the element of malice from the jury instructions defining second degree murder. Subsequently, in *State v. Grimes, ante* p. 473, 519 N.W.2d 507 (1994), and in the case at bar, the majority has held that an information which fails to include malice as an element of second degree murder is plain error requiring reversal of a defendant's conviction for second degree murder. I dissented in *State v. Grimes*, and for the reasons set forth in that dissent, I again disagree with the holding that malice is an essential element of second degree murder. I also disagree with the majority's opinion that failure to include malice in an information charging second degree murder is plain error.

Basic to procedural due process is that the party charged be notified of the charge and given a reasonable opportunity to be heard and to present any defense to the charge. See *State ex rel. Labedz v. Beermann*, 229 Neb. 657, 428 N.W.2d 608 (1988). The underlying issue presented in this case is whether Manzer was reasonably notified of the crime for which he was charged so that he had a reasonable opportunity to present a defense to the charge. Manzer's guilty plea to the charge of second degree murder was the result of an agreement in which the offense of first degree murder was reduced to second degree murder and one count of use of a firearm to commit a felony was dismissed. Manzer's sole assignment of error on appeal was that the sentences he received in connection with his guilty pleas were excessive.

Manzer acknowledged that he understood the nature of the charges, the possible penalties, and his constitutional rights. He informed the court that he had had sufficient time to consult with his attorneys before proceeding, and he advised the court that he wished to enter pleas of guilty. The court was given the factual basis that Manzer shot his father three times with a shotgun—the last time at pointblank range. Mistaking his sister for his mother, Manzer shot and wounded his sister. The court then accepted Manzer's pleas of guilty and found them to be freely, voluntarily, and intelligently made with full knowledge of the nature of the charges and the possible penalties. For these reasons, I believe the amended information, set forth in the language of the second degree murder statute, complied with

procedural due process.

In my opinion, Manzer was given reasonable notice and an opportunity to be heard and to present any defense to the charges set forth in the amended information. There is no doubt in my mind that Manzer knew the crime for which he was charged. I would, therefore, affirm the convictions and sentences of Manzer in all respects.