STATE OF NEBRASKA, APPELLEE, V. CHRISTOPHER M. MOORE, APPELLANT.

547 N.W.2d 159

Filed April 23, 1996.    No. A–95–338.

Martin J. Kushner, of Kushner Law Office, for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

HANNON, SIEVERS, and INBODY, Judges.

INBODY, Judge.

## INTRODUCTION

By jury verdict, Christopher M. Moore was convicted of three counts of first degree sexual assault upon Brian K., Jr.; Daniel K.; and Sean K. He was sentenced to not less than 10 nor more than 15 years' imprisonment on each count, the sentences to run consecutively. Moore contends that certain evidence was improperly admitted, that the court improperly denied his request for a mistrial, that the evidence was insufficient to support the guilty verdicts, and that the sentences imposed were excessive. For the reasons set forth below, we affirm in part, and in part reverse, and remand for resentencing.

## STATEMENT OF FACTS

We review the facts in the light most favorable to the State as we are required to do. See *State v. Dyer*, 245 Neb. 385, 513 N.W.2d 316 (1994).

This matter involves seven codefendants who were charged with sexually assaulting one or more of the above–named victims at about the same time. However, the other six individuals were not on trial with Moore. Ultimately, the codefendants were convicted of various offenses against one or more of the above–named victims.

All three victims in this case are the biological children of Brian K., Sr., and Kelly T. Brian Jr., who was 11 years old at the time of the trial, was born on March 29, 1983. Daniel, who was 9 years old at the time of the trial, was born on May 29, 1985. Sean, who was 7 years old at the time of the trial, was born on August 6, 1987. Brian Sr. and Kelly were never married and at the time of the offenses were not residing

together. However, Brian Sr. is now married to Laurie K., and they reside in Council Bluffs, Iowa.

In addition to the alleged victims in this case, Kelly also has four younger children. From December 1992 through August 1993, Kelly and all of the children lived in a Park Avenue duplex in Omaha. In August 1993, the children were removed from Kelly, apparently for reasons other than these assaults, and the children were all placed in foster care at that time, except Daniel and Sean, who went to live with Brian Sr. and Laurie. Brian Jr. was placed in foster care initially, but subsequently came to live with his father in late March 1994.

On the evening of February 28, 1994, Brian Sr. first learned of the sexual assaults of Daniel and Sean when he overheard them in their bedroom saying "you're gonna suck my dick" to each other. When he asked them where they had learned that, they told him from their mother, Kelly. The boys then told their father and Laurie about having been sexually assaulted by the various defendants between December 1992 and August 1993, while they were living with their mother on Park Avenue. The boys gave the names of the parties who had assaulted them; one of the names given by the boys was of a Native American male, "Chris," later found to be Moore.

On March 1, 1994, Brian Sr. and Laurie gave statements to Officer Steven Henthorn of the Omaha Police Division concerning the sexual assault allegations that Daniel and Sean had made the night before. Daniel and Sean were also interviewed by Officer Henthorn on March 1. Sean stated that he had been assaulted 5 or 6 times at the Park Avenue duplex and gave the names of "Jessie, Willie, Roger, Chris, Lilley, Louis and Louie" as the parties who assaulted him. Daniel gave the names of "Willie, Jessie, Chris, and Roger." Daniel also spoke of being hit with leather belts and "crib sticks" and threatened by the parties not to tell anyone. Both boys stated that the parties were drinking when they sexually assaulted them, and the boys knew the parties by their first names. The first day that Officer Henthorn talked to Sean and Daniel, he also spoke to Kelly. Kelly was able to provide Officer Henthorn with the last names of some of the suspects; however, she did not know either Chris' or Lilley's last name.

On March 7, 1994, Officer Henthorn talked to Brian Jr. for the first time. At that time, Brian Jr. denied that he had been sexually assaulted, but he said he had watched it happening to Daniel and Sean. Later that month, Officer Henthorn was contacted by Brian Sr., who stated to Officer Henthorn that the boys had been discussing things, and Brian Jr. had said that he had also been sexually assaulted. Officer Henthorn subsequently interviewed Brian Jr. again on March 31. At that time, Brian Jr. told him of being sexually assaulted by a person named "Chris," and Brian Jr. showed Officer Henthorn notes he had written the night before which described the alleged assaults and identified Chris and others as the alleged perpetrators.

At some point, Officer Henthorn talked to Peggy K., who is the sister of Brian Sr. Peggy was able to provide Officer Henthorn with the last name of Lilley and thought that Chris' last name was Walker. With that information, Officer Henthorn "pulled up a Chris Walker Indian male out of the computer" and was able to obtain an Omaha Police Division photograph of him. However, during the first week of April 1994, when he showed each of the boys the photograph of Walker, none of them recognized him.

Officer Henthorn then received an anonymous phone call from someone who told him that Chris Moore was the party the police were looking for in this case. Officer Henthorn was able to obtain a photograph of Moore, and during the second week of April 1994, he individually showed each of the three boys Moore's photograph. All three boys identified Moore as being the "Chris" who had sexually assaulted them.

On June 7, 1994, Moore was charged in an original information with two counts of sexual assault of a child, both Class IV felonies. The first count alleged sexual contact between Moore and Sean, and the second count alleged sexual contact between Moore and Daniel.

In an amended information filed December 9, 1994, 1 business day before Moore was scheduled to go to trial, Moore was charged with three counts of first degree sexual assault on a child, all Class II felonies. Those charges alleged sexual penetration by Moore upon each of the three boys, Brian Jr., Daniel, and Sean, between December 1, 1992, and August 2,

1993. Moore, through counsel, objected to the substantial change in charges at a date so close to trial. The court allowed the amended charges to be filed and continued the matter to give defense counsel time to investigate the new charges.

On February 14, 1995, Moore filed six motions in limine in the district court. On February 15, the court held a *Wade* hearing on the sixth motion in limine, which was subsequently overruled. See *United States v. Wade*, 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967). On February 28, the court ruled on the five remaining motions in limine. The first, third, and fifth motions were sustained; the second and fourth motions were overruled. The third motion in limine requested the court to enter an order preventing any mention whatsoever of any allegations of sexual misconduct with any victims other than the three children (Brian Jr., Daniel, and Sean) who were the subjects of the amended information filed against Moore.

At trial, Daniel was the first individual called to the stand. Daniel stated that at the time in question, he lived with his mother, Kelly, in a blue duplex on Park Avenue. He stated that "the Indians" came to visit his mother at that location. Daniel was able to list names of some of the individuals he was including in the group he referred to as "the Indians"; one of the individuals he referred to as "Chris." When asked if he saw "Chris" in the courtroom, Daniel identified Moore. Daniel testified at trial that Moore put his "wienie" in Daniel's mouth when Daniel was upstairs playing in his bedroom. Daniel testified that these assaults happened two times. Later in his testimony, Daniel testified that the individual he identified as Chris came to the duplex mostly in the summer months; however, that individual was also there "in the winter in the beginning."

Brian Jr. was the next individual called to testify. Brian testified that when he lived at the blue duplex, a group of people he called "the Indians" would come over to the house. This group of people included Moore. Brian Jr. also testified that these people visited at the duplex from around the time his family moved in until the time he moved out. Brian Jr. stated that they were over to the house at "[d]ifferent times." When asked by counsel if "Chris" was in court, Brian Jr. pointed out

Moore. Brian Jr. testified that while he was in his sister's room, Moore came into the room and pushed him down on the floor. When asked what happened, Brian Jr. testified that "[h]e . . . pulled down his pants and he got on, sat on my chest. Then he put his wienie in my mouth." Brian Jr. further testified that he thought that Moore was at the duplex during both the winter and the spring months.

Sean was also called to the stand. Sean testified to remembering living in a "blue house," but he could not remember when that was. He testified that he lived at the blue house with "[m]y mom and the Indians," and "my brothers and sisters." When asked who the Indians were, Sean testified: "The people that did stuff to you." Sean identified Moore when asked if "Chris" was in the courtroom. When asked what Moore did to him, Sean testified that when he was in his bedroom, Moore tied him down with rope and "stuck his wienie in my mouth." Sean testified that he could not remember if this happened more than once, but he did know Moore did it that one time.

Later in the trial, Officer Henthorn was called as a witness by the State. Officer Henthorn testified that at the beginning of the investigation, he did not know Chris' last name. He had thought Chris might be Chris Walker, but later found that this was not the correct individual. Henthorn testified that he first got the name of Chris Moore through an anonymous telephone call.

Several other witnesses were called by the State, including Laurie and Brian Sr. After the State rested, the defense made a motion for a directed verdict of acquittal, but the motion was overruled by the court.

Moore then testified on his own behalf. Moore denied committing any of the acts alleged by the victims. He stated that he could not have been involved in events that occurred from December 1992 through August 1993, because most of that time (December 14, 1992, through June 2, 1993) he was in jail in Pottawattamie County, Iowa. Following the testimony of Moore, the defense rested and renewed its motion for a directed acquittal. The motion was again overruled by the court.

After deliberation, the jury found Moore guilty as to all three counts of first degree sexual assault on a child. Moore was

sentenced to 10 to 15 years' imprisonment on each of the three counts for which he was convicted. The court indicated that these sentences were to run consecutively, and accordingly, Moore had received a total sentence of 30 to 45 years. This appeal followed.

## ASSIGNMENTS OF ERROR

On appeal, Moore assigns as error that (1) the trial court erred in admitting a substantial amount of hearsay and double hearsay from various witnesses over the continuing objections of Moore's counsel, (2) the trial court erred in denying Moore's motion for a mistrial when a State's witness provided information in violation of the court's order with regard to Moore's third motion in limine, (3) there was insufficient evidence upon which the jury could have validly based its verdict of guilty with regard to any of the charges against Moore, and (4) the sentences imposed were excessive, and as such were an abuse of discretion.

## STANDARD OF REVIEW

■ In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Pierce*, 248 Neb. 536, 537 N.W.2d 323 (1995).

■ In all proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by the Nebraska Evidence Rules, not judicial discretion, except in those instances under the Nebraska Evidence Rules when judicial discretion is a factor involved in the admissibility of evidence. *State v. Anderson*, 245 Neb. 237, 512 N.W.2d 367 (1994).

■ A sentence imposed within the statutory limits will not be disturbed on appeal absent an abuse of discretion by the sentencing court. *State v. Manzer*, 246 Neb. 536, 519 N.W.2d 558 (1994); *State v. Wood*, 245 Neb. 63, 511 N.W.2d 90 (1994); *State v. Ice*, 244 Neb. 875, 509 N.W.2d 407 (1994); *State v. Philipps*, 242 Neb. 894, 496 N.W.2d 874 (1993). An abuse of

discretion occurs when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *Wood, supra*; *State v. Lowe*, 244 Neb. 173, 505 N.W.2d 662 (1993), *postconviction relief granted on other grounds* 248 Neb. 215, 533 N.W.2d 99 (1995).

## ANALYSIS

*Admission of Evidence.*

Moore argues that the district court erred in admitting a substantial amount of hearsay, and double hearsay, from various witnesses over the objections of Moore. In all proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by the Nebraska Evidence Rules, not judicial discretion, except in those instances under the Nebraska Evidence Rules when judicial discretion is a factor involved in the admissibility of evidence. *Wiekhorst Bros. Excav. & Equip. v. Ludewig*, 247 Neb. 547, 529 N.W.2d 33 (1995). The admission of hearsay is controlled by the Nebraska Evidence Rules. *Wiekhorst Bros. Excav. & Equip., supra*. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Neb. Rev. Stat. § 27-801(3) (Reissue 1995).

Moore complains that Officer Henthorn and Brian Sr. testified to statements that constituted hearsay. Officer Henthorn related the things that the boys had told him about Moore's assaulting them. During this testimony, a drawing which Officer Henthorn used to have Sean describe where he touched or was touched by Moore was offered into evidence by the State and objected to by Moore. Brian Sr. testified that he first found out about the sexual abuse of his boys by talking to Daniel and Sean. Brian Sr. stated that he had talked to Brian Jr. about the incidents and that Brian Jr. denied that anything had happened to him. Brian Jr. ultimately told his father that all three boys had been told that Brian Sr. would be killed if they told anyone.

As previously noted, Daniel identified Moore during the trial and testified that Moore had put his "wienie" in Daniel's mouth when Daniel was upstairs playing in his bedroom. Brian Jr. identified Moore during the trial and testified in reference to Moore that "[h]e . . . pulled down his pants and he got on, sat

on my chest. Then he put his wienie in my mouth." Sean identified Moore during the trial and testified that when he was in his bedroom, Moore tied him down with rope and "stuck his wienie in my mouth."

It appears from the questioning and statements of Moore's counsel that the defense was implying that each of the boys had been told or forced by their father or stepmother to tell these stories of abuse in order for their father to gain custody of them. Without going through each witness' testimony here, suffice it to say that it is clear that the victims were questioned about whether their father or stepmother had told them what to say or whether their father or stepmother had "reminded" them of what they had said earlier.

Section 27–801(4)(a) states that a statement is not hearsay if "[t]he declarant testifies at the trial or hearing and is subject to cross–examination concerning the statement, and the statement is . . . (ii) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive . . . ." Brian Sr. was the last witness called by the State. Therefore, the court properly allowed the State to have Brian Sr. testify as to his sons' statements in order to rebut the implication that the boys had been told what to say. See *State v. Tlamka*, 244 Neb. 670, 508 N.W.2d 846 (1993).

Officer Henthorn was the second to last witness to testify in the State's case, and his testimony was also admissible to rebut the implication that the boys had been told what to say.

Moore next complains that the court erred in allowing into evidence the notes written by Brian Jr. concerning the assault. The State contends that these notes were offered to support Brian Jr.'s testimony that Moore had assaulted him and to show that he had not changed his story since he first disclosed what had happened.

■ The erroneous admission of evidence is harmless error and does not require reversal if the evidence erroneously admitted is cumulative and other relevant evidence, properly admitted, or admitted without objection, supports the finding by the trier of fact. *State v. Cox*, 231 Neb. 495, 437 N.W.2d 134 (1989); *State v. Max*, 1 Neb. App. 257, 492 N.W.2d 887

(1992). Further, erroneous admission of evidence in a criminal trial is not prejudicial if it can be said that the error was harmless beyond a reasonable doubt. *State v. Fahlk*, 246 Neb. 834, 524 N.W.2d 39 (1994). We conclude that even if any of this evidence was erroneously admitted, the statements and exhibits were repetitive of the properly admitted testimony of Brian Jr., Daniel, and Sean. Since it was cumulative evidence, its admission was not reversible error.

*Mistrial.*

Moore next complains that the trial court erred in refusing to grant a mistrial based upon a violation of one of his motions in limine. Prior to the commencement of trial, Moore's counsel filed numerous motions in limine. The third motion in limine requested the court to enter an order preventing any mention whatsoever of any allegations of sexual misconduct with any victims other than the three children (Brian Jr., Daniel, and Sean) who were the subjects of the amended information filed against Moore. The judge sustained this motion. During the trial, Brian Jr. was asked by the State whether Moore did anything else similar to a previous incident described by Brian Jr., *to Brian Jr.* Brian Jr., in response to this question, answered: "To my sister, to my sister." Moore immediately objected and moved for a mistrial based on the violation of the court's ruling with regard to the motion in limine. The trial judge overruled the motion, finding that the question itself, as asked by the State, was not intended to elicit the response that the witness barely whispered. The judge went on to indicate that it was questionable whether the answer was audible to the jury. The judge found that the incident did not rise to the level of prejudice necessary to grant a mistrial. In discussing whether the jury should be instructed to disregard the answer, counsel for Moore specifically indicated that he did not want the jury so instructed. No admonition was given to the jury.

■ A motion for mistrial is properly granted only when an event occurs during the course of a trial which is of such a nature that its damaging effects cannot be removed by proper admonition or instruction to the jury and would thus result in preventing a fair trial. *State v. Palser*, 238 Neb. 193, 469

N.W.2d 753 (1991). A motion for mistrial is directed to the discretion of the trial court. Its ruling will not be disturbed on appeal absent a showing of abuse of discretion. *Nichols v. Busse*, 243 Neb. 811, 503 N.W.2d 173 (1993).

Moore agrees that there was no prosecutorial misconduct, but argues that since the evidence adduced was inadmissible it is presumed to be prejudicial. This issue was discussed in *State v. Groves*, 239 Neb. 660, 477 N.W.2d 789 (1991), where a deputy sheriff volunteered that a shotgun found close by the defendant was stolen. The Nebraska Supreme Court stated that the defendant must prove that the alleged error actually prejudiced him, rather than create the mere possibility of prejudice. The court found that the prosecutor's question to the deputy was not improper, and the prosecutor bore no responsibility for the deputy's wanderings. Since the defendant could show no prejudice from the statement, the trial court properly denied the motion for mistrial.

Here, the witness who made the statement was 11 years old, and the record indicates that he either did not understand the question or was confused by it. Moore declined to have the jury admonished to disregard the statement. Moore has the burden to show that he was prejudiced by the volunteered statement of the witness, and he has not done so. Under these circumstances, it was not an abuse of discretion for the trial court to refuse to declare a mistrial.

## Insufficiency of Evidence.

Moore next contends that the evidence adduced to the jury was insufficient as a matter of law to sustain his convictions for first degree sexual assault on these three boys. He contends that in this case the potential is great for an emotional decision, not a decision based on the evidence presented. We are aware that the victims are Caucasian and that Moore is Native American, but those facts alone do not constitute prejudicial error.

To be guilty of first degree sexual assault on a child as he was charged, Moore must have been a person of 19 years of age or older who subjected a person of less than 16 years of age to sexual penetration.

It is uncontested that between December 1, 1992, and August 2, 1993, Moore was a person of 19 years of age or older and that Brian Jr., Daniel, and Sean were persons of less than 16 years of age.

While it is clear that the testimony of Brian Jr., Daniel, and Sean was somewhat confused, they all consistently identified Moore as one of the individuals who sexually penetrated them. The evidence established that he was named when the boys talked to their father and stepmother about the incidents. Moore was named when the boys talked to the police. Each of the boys identified Moore in court as one of the individuals who assaulted them. Moore, while testifying, denied having committed any of the assaults on these boys which were alleged against him. The amended information stated that the assaults were alleged to have occurred from December 1992 through August 1993. Evidence was presented that Moore was incarcerated in the Pottawattamie County jail from December 14, 1992, through June 2, 1993. Moore also testified that he was at the boys' home after being released from jail in June 1993.

It is not for this court to resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Those matters are for the finder of fact, and a conviction rendered by a jury will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Pierce*, 248 Neb. 536, 537 N.W.2d 323 (1995).

Clearly, when the evidence is viewed in the light most favorable to the State, there is sufficient evidence to support the jury's finding that Moore was guilty of first degree sexual assault on each of these three children. Therefore, Moore's contention that there was insufficient evidence to support his convictions on these charges is without merit.

*Excessive Sentences.*

Moore's next assignment of error is that the sentences imposed upon him were excessive.

First degree sexual assault on a child is a Class II felony, punishable by imprisonment of not less than 1 nor more than 50 years. Neb. Rev. Stat § 28–319(1)(c) and (2) (Reissue 1989) (first degree sexual assault on a child statute); Neb. Rev. Stat. § 28–105 (Reissue 1989) (felony sentences statute). Moore was sentenced to a term of imprisonment of not less than 10 nor more than 15 years on each count. These sentences are to run consecutively.

A sentence imposed within the statutory limits will not be disturbed on appeal absent an abuse of discretion by the sentencing court. *State v. Manzer*, 246 Neb. 536, 519 N.W.2d 558 (1994); *State v. Wood*, 245 Neb. 63, 511 N.W.2d 90 (1994); *State v. Ice*, 244 Neb. 875, 509 N.W.2d 407 (1994); *State v. Philipps*, 242 Neb. 894, 496 N.W.2d 874 (1993). An abuse of discretion occurs when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *Wood, supra*; *State v. Lowe*, 244 Neb. 173, 505 N.W.2d 662 (1993).

*Election to Go to Trial.*

Moore complains that he was punished by the trial court for electing, as was his constitutional right, to force the State to produce its evidence and have his guilt determined by a jury of his peers. Moore bases his argument on the fact that the trial court informed him prior to trial that he would likely be punished more severely if he went to trial and was convicted of these charges by a jury than if he pled guilty to one count of the information as part of a plea bargain.

The record reflects that the following colloquy took place on the first morning of the jury trial:

MR. KUSHNER: . . . .

Judge, there are a couple of things I'd like to bring up on the record with Mr. Moore present to make sure there is no misunderstanding. The first is to confirm that I have discussed with Mr. Moore the status of plea negotiations prior to starting trial this afternoon. I've indicated to Mr. Moore that the County Attorney's office has stated they would be willing to let him plead to one count of this

charge against him, this Information, which would be one count of Class II sexual assault, felony Class II.

The Court has, as I understand, given some indication to me, that given what the Court knows thus far from prior trials and related matters and various things, that there is a substantial likelihood of a sentence in the four– to seven–year range. Although the Court made it clear that there is no guarantee of that, and that various additional things would have to be looked at. That I've given Mr. Moore some sense that it's my opinion that that would be a likely outcome in the case of a plea.

I've made him aware of the other options, to go to trial on all three counts, and obviously if acquitted, there's no consequence to him. But if convicted, it is my professional opinion that his sentence could be substantially longer.

And Mr. Moore and I have discussed that. We've discussed it on two different phone calls yesterday, discussed it at the jail, I believe a week ago Saturday. We've discussed it numerous times. And it's my understanding that Mr. Moore still wishes to proceed to trial. Is that right, Chris?

THE DEFENDANT: Yes.

THE COURT: Thank you, Mr. Kushner. And you are correct, counsel for the State, as well as counsel for Mr. Moore, have had several conversations with the Court, and the Court is mindful of the importance of plea bargains. And for that reason, the Court did have a conversation with counsel for the State and counsel for Mr. Moore about the probability of what the sentence would be if Mr. Moore did take the State up on its offer. The Court is aware that it should encourage plea bargains, but more importantly, the Court is aware that in this particular case of what the testimony is likely to be in this case, since the Court has had many opportunities to listen to the testimony of the victims and the other witnesses in this case.

So this is a little different situation. And Mr. Kushner, you're very correct, that there is a substantial likelihood that *if the jury comes back after hearing the testimony of*

*the witnesses and does make a finding of guilty, that the sentence will be nowhere near what it was proposed to be in the event that Mr. Moore did decide to plead to just the one charge.*

Again, the Court can make no promises, and as the Court has indicated before to Mr. Moore, that *having looked at his background and knowing what the Court does know about this particular case, these particular cases, that the Court probably would follow the suggestions of the attorneys regarding the sentence.*

And I think you are correct, Mr. Kushner, for making a record so that it is very clear that you have advised your client in a very professional and in a very intelligent manner.

MR. KUSHNER: Thank you.

(Emphasis supplied.)

It is evident that this colloquy could create an appearance that the trial judge was participating in the plea bargaining process with Moore and the State.

■ It is clear that a defendant may not receive a more severe sentence because he or she pled not guilty and put the State to the expense of a trial. See, *State v. Jallen,* 218 Neb. 882, 359 N.W.2d 816 (1984); *State v. Lacy,* 195 Neb. 299, 237 N.W.2d 650 (1976). Moore contends that the trial judge participated in the plea negotiations and then enhanced his sentences solely as punishment to Moore for having elected to go to trial.

The Nebraska Supreme Court has stated that it strongly discourages judicial participation in the plea bargaining process. *State v. Ditter,* 232 Neb. 600, 441 N.W.2d 622 (1989). In taking that position, our Supreme Court quotes from *United States v. Gilligan,* 256 F. Supp. 244 (S.D.N.Y. 1966):

"A judge's prime responsibility is to maintain the integrity of the judicial system; to see that due process of law, equal protection of the laws and the basic safeguards of a fair trial are upheld. . . .

". . . As has been urged: 'Our concept of due process must draw a distinct line between, on the one hand, advice from and "bargaining" between defense and prosecuting attorneys and, on the other hand, discussions by judges

who are ultimately to determine the length of sentence to be imposed.' "

*State v. Svoboda*, 205 Neb. 175, 182–83, 287 N.W.2d 41, 45 (1980).

The most common objection to the trial judge's participating in plea bargaining has usually arisen in the context of a defendant who is seeking to set aside a guilty plea on the basis that it was not voluntary. However, the judge's participation in the plea bargaining process is also as objectionable when a plea bargain is not reached as when it is. This is due to the fact that a judge cannot encourage a plea bargain without risking, at a minimum, the appearance that the judge is attempting to coerce the defendant, the State, or both. It is one thing for a defendant to receive a more severe sentence from a judge than he was offered from the county attorney and another thing for a defendant to receive a more severe sentence than he was offered in a plea bargain when that judge had encouraged or appeared to attempt to pressure the defendant into accepting a plea bargain.

*Proportionality.*

Moore contends that he was sentenced more heavily than the coperpetrators in this case, who did not have jury trials. He argues that this supports his theory that the trial court was punishing him for electing to proceed with the jury trial.

As previously noted, there were seven individuals who were alleged to have participated in acts of sexual contact with one or more of the victims in this case. By virtue of an order expanding the record in this case, Moore is asking us to compare the sentences received by the other individuals to the sentences imposed upon him. Supplemental bills of exceptions were filed containing the plea hearings, trial, and sentencing hearings conducted by the same trial judge for Jesse Hallowell, William Hallowell, Roger McKinley, and Lilley Keller.

The Nebraska Supreme Court stated in *State v. Shonkwiler*, 187 Neb. 747, 751, 194 N.W.2d 172, 174 (1972):

At least as early as 1905, this court expressed its view that where two or more defendants are convicted for the same offense and different penalties are inflicted, and it

appears from the evidence that the defendant receiving the least punishment is at least equally guilty, it may be necessary for this court to examine the evidence to determine whether there were justifiable reasons for the distinctions and whether the higher sentence should be reduced.

See, also, *State v. Nix*, 215 Neb. 410, 338 N.W.2d 782 (1983), *overruled on other grounds, State v. Morrow*, 220 Neb. 247, 369 N.W.2d 89 (1985); *State v. Kruse*, 215 Neb. 408, 338 N.W.2d 781 (1983); *State v. Komor*, 213 Neb. 376, 329 N.W.2d 120 (1983); *State v. Javins*, 199 Neb. 38, 255 N.W.2d 872 (1977); *State v. Burkhardt*, 194 Neb. 265, 231 N.W.2d 354 (1975).

Moore contends that for basis of comparison the closest situations to his own are the cases of McKinley and William Hallowell. He further argues that the next closest would be the case of Jesse Hallowell.

McKinley appeared before the court on two counts of first degree sexual assault on a child. As part of a plea bargain, McKinley entered pleas of no contest to both counts, and a charge of first degree sexual assault on a child unrelated to this particular incident was dismissed. McKinley waived a presentence investigation and was sentenced the same day to the Nebraska Department of Correctional Services for a period of 5 to 9 years' imprisonment on each count. These sentences were to run concurrently.

William Hallowell was originally charged with two counts of first degree sexual assault on a child. As part of a plea bargain, he pled guilty to one count, and the other was dismissed. William waived a presentence investigation and proceeded immediately to sentencing. He was then sentenced to the Nebraska Department of Correctional Services for a period of 9 to 10 years' imprisonment.

Jesse Hallowell came before the court on three counts of first degree sexual assault on a child. A bench trial was held on a stipulated set of evidentiary exhibits, and the matter was submitted. Later, the court found Jesse guilty on all three counts and ordered a presentence investigation. Following a sentencing hearing, Jesse was sentenced to the Nebraska Department of

Correctional Services for a period of 5 to 8 years' imprisonment on each count. These sentences were to run concurrently.

■ In imposing a sentence, a sentencing judge should consider the defendant's age, mentality, education, experience, and social and cultural background, as well as his or her past criminal record or law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime. *State v. Lowe*, 244 Neb. 173, 505 N.W.2d 662 (1993); *State v. Ellen*, 243 Neb. 522, 500 N.W.2d 818 (1993).

■ The mere fact that a defendant's sentence differs from those which have been imposed on coperpetrators in the same court does not, in and of itself, make the defendant's sentence an abuse of discretion; each defendant's life, character, and previous conduct may be considered in determining the propriety of the sentence. *State v. Sobieszczyk*, 2 Neb. App. 116, 507 N.W.2d 660 (1993).

Prior to actually sentencing William Hallowell, the trial judge told William that she would give him credit for not making the boys go through their testimony again and that she was willing not to give him the maximum sentence. She then sentenced him to a period of 9 to 10 years' imprisonment.

During the sentencing hearing of Jesse Hallowell, he told the court: "I just wanted to say I feel badly for all the people that had to go through this." The court responded:

> Thank you sir. I'm glad to hear you say that. . . .
>
> As you very well know, we have had a lot of hearings in this case, and all of these cases involving the co-defendants. . . .
>
> So if there's anything commendable about this terrible situation, it's the fact that you didn't make those three boys come in and have to testify any more than they already have. You certainly have a right to exercise your constitutional right to a trial, either by a jury — you chose to submit the matter to the Court. So I'm taking that into consideration.

It is not unusual for a defendant to request credit for not requiring the State to proceed to a trial. A defendant has no absolute right to a reduced sentence because he saves the State

the expense of a trial, relieves the victim from having to appear in court, and accepts the responsibility of his actions. See *State v. Suffredini*, 224 Neb. 220, 397 N.W.2d 51 (1986). However, those factors may certainly be considered by the court when imposing a sentence.

However, that does not answer the question here because, in the case at bar, the trial judge created the appearance that she was participating in the plea bargain with Moore. When a judge creates the appearance of participation or actually participates in plea bargaining by encouraging or pressuring a defendant to accept a plea bargain instead of going to trial, the following rule applies:

> [C]ourts must not use the sentencing power as a carrot and stick to clear congested calendars, and they must not create an appearance of such a practice.
>
> Accordingly, once it appears in the record that the court has taken a hand in plea bargaining, that a tentative sentence has been discussed, and that a harsher sentence has followed a breakdown in negotiations, the record must show that no improper weight was given the failure to plead guilty. In such a case, the record must affirmatively show that the court sentenced the defendant solely upon the facts of his case and his personal history, and not as punishment for his refusal to plead guilty.

*United States v. Stockwell*, 472 F.2d 1186, 1187–88 (9th Cir. 1973). See, *Hess v. United States*, 496 F.2d 936 (8th Cir. 1974); *State v. Jallen*, 218 Neb. 882, 359 N.W.2d 816 (1984).

It appears that when a judge advises the defendant of the penalty that would be imposed upon a plea of guilty and then imposes a significantly harsher sentence when the defendant is found guilty after a trial, the judge then bears the burden of establishing that the increased sentence is due solely to the facts of the case and the personal history of the defendant. If the trial court, which was involved in the plea bargaining or created the appearance thereof, fails to establish the reason for the harsher sentence, the failure to so establish renders the harsher sentence an abuse of discretion.

In *U.S. v. Mazzaferro*, 865 F.2d 450 (1st Cir. 1989), the defendant maintained his sentence was unduly harsh because he

refused a plea bargain, and he had received a greater sentence than his codefendants. The *Mazzaferro* court stated:

> "When there is substantial disparity in sentences imposed upon different individuals for engaging in the same criminal activity, [where some have pled guilty and others have gone to trial], the preservation of the appearance of judicial integrity and impartiality requires that the sentencing judge record an explanation.". . .

> . . . In *Longval v. Meachum*, 693 F.2d 236 (1st Cir.1982) . . . the trial judge told the defendant that if he refused to plea bargain, a substantial sentence might be imposed on him. The defendant did not plea bargain and he was sentenced to 40 to 50 years imprisonment, while his co-defendant, who did plead guilty, was sentenced to 3 years. Following [the U.S. Supreme Court's holding] that a presumption of vindictiveness arises whenever a detrimental action is taken after a defendant exercises a legal right in circumstances in which there is a "reasonable likelihood of vindictiveness," we held that "the on-the-surface differential, and the total sentence imposed, are too great to allay a reasonable apprehension that the sentencing judge's original remarks were unjudicial urgings to plead, and that the sentences were a retaliatory consequence of the defendant's refusal."

(Emphasis omitted.) 865 F.2d at 459. The *Mazzaferro* court set aside the defendant's sentence and remanded the case with directions that the defendant be resentenced by a different judge.

Here, at sentencing the judge stated that in sentencing Moore she was considering the fact that his past criminal record contained numerous entries, with two felony convictions, including a 1992 robbery in Iowa and an escape charge from Nebraska. The judge also expressed her opinion that Moore committed perjury at the trial and that she has a duty to protect the public. The judge specifically mentioned the numerous times that the victims had to testify and that their memories of disgusting and depraved things will never be erased. The judge also stated that Moore had a right to a jury trial, which no one could take away, and a right to testify, but he had no right to commit perjury. Just prior to imposing the sentences, the judge

stated that "I have a duty to punish you, Mr. Moore, for what you did to those little boys, and I have a duty to protect the public. And for those reasons, I'm going to send you to prison for a very, very long time."

The difficulty with the judge's statement at sentencing is that it must be read in light of the statement the judge made in encouraging the plea bargain that indicated she had looked at Moore's background and "knowing what the Court does know about this particular case . . . that the Court probably would follow the suggestions of the attorneys regarding the sentence." This would have resulted in a sentence of not less than 4 nor more than 7 years.

The record reflects that some, but not all, of the codefendants had criminal records comparable to Moore's record. Further, the record discloses that the codefendants did essentially the same acts as Moore, and yet the trial judge did not feel it was necessary to impose such long sentences against them to protect the public. The only fact that the judge indicated that she became aware of after the plea bargain had been disclosed on the record was that Moore committed perjury during the trial. The record does not indicate that Moore was convicted of perjury.

Based on this record, we cannot say that the court met the required burden of stating adequate reasons why Moore was sentenced more severely on each count than the sentence he was offered on one count as part of the plea bargain which had been disclosed on the record or why he was sentenced, as to each count, more severely than his codefendants. As a result, we have no alternative but to conclude that the court sentenced Moore more severely because he insisted upon his right to a jury trial and that, consequently, Moore's sentences were an abuse of discretion. Thus, we must determine that the sentence imposed on each of the three counts by the trial judge is clearly untenable and unfairly deprived Moore of a substantial right and a just result.

## CONCLUSION

We affirm the court's ruling concerning the admission of evidence, and we find that the evidence was sufficient to support

Moore's convictions. However, we find that the sentences imposed upon Moore were an abuse of discretion because the sentencing judge's reasons for the sentences were clearly untenable and unfairly deprived Moore of a substantial right and a just result. Therefore, we reverse in part, and remand for resentencing by a different judge.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED FOR RESENTENCING.